J. L. Key, R. W. Milner and W. H. Hulsey, for plain-
tiffs in error.    Candler & Thomson, contra.

--------

## MILLS v. HUDGINS.

Atkinson, J.—It plainly appearing that the property of the plain-
tiff, a married woman, was given up by her for the purpose
of suppressing a criminal prosecution against her husband
and son, and to settle a debt due by the husband, she was enti-
tled to maintain an action for its recovery against the person
who thus took it from her.    The evidence demanded a finding
in her favor, and the judgment for the defendant rendered by
the judge without a jury was totally unsupported.
February 7, 1896.                          Judgment reversed.

Complaint in trover.    Before Judge Jones.    City court
of DeKalb county.    July term, 1895.

Emma Mills sued Hamlin Hudgins for a dark dun-
colored cow about ten years old, and a light dun-colored
heifer about sixteen months old.    The case was tried by
the judge without a jury.    He found for the defendant.
Plaintiff moved for a new trial upon the general grounds,
and her motion was overruled.

Upon the trial plaintiff put in evidence the original de-
mand for the cows sued for.    She testified: She owned the
two cows.    They were taken from her possession in March,
1895, by defendant.    The cow was given her by her son
Moses Hill, who worked for Thomas Wallace in 1894, and
who took the cow from Wallace for part of his hire.    She
hired her son to Wallace, and was to get his hire or part of
it herself, and the cow was gotten in that way.    Moses was
her son by her first husband.    The heifer sued for was the
calf of a cow which died the first of 1894.    Her present
husband, Berry Mills, gave this cow to her some five years
ago, and she claimed the heifer as hers by reason of its

v 97-27

mother being hers. The cow sued for is worth $20. The heifer is half Jersey, and worth $25 or $30. She gave Campbell a mortgage for $15 some time in 1894, to get of him supplies for herself and family, but the mortgage was paid off long before defendant got the two cows. She did not owe anything on the mortgage then, and did not consent that the cows should be taken by defendant on the mortgage debt. Her son Moses and her son Israel testified, corroborating her as to the ownership of the cattle. Thomas Wallace testified: He had Moses Hill hired for 1894; hired him from his mother, the plaintiff. One half of Moses' hire was to go to his mother and the other half to Moses. Witness sold to Moses and his mother the cow sued for, at $15, and the cow went as part payment for the hire of Moses. He considered the cow worth $15. Plaintiff got the cow some time in the spring of 1894, soon after her other cow died.—Berry Mills testified, corroborating the testimony of his wife as to her ownership of the cattle and as to the way she got them. He did not sign the mortgage given by his wife to Campbell. That mortgage was paid off while Campbell had it, and long before defendant got possession of the cows. Witness owed Campbell $23.30 for balance of supplies witness got of him. This was what was due on it when Campbell foreclosed his lien for said supplies. Plaintiff did not sign the lien contract for supplies. After Campbell foreclosed his lien, Lanceford, constable, levied it on witness's crop, and sold a part of the crop and let the other part waste. Witness paid the mortgage given to Campbell by his wife out of his crop, in the fall of 1894, as the cotton was gathered and sold. His wife controlled her boys' labor and got it. Witness had two sons by his former wife, and all the family, consisting of wife and her children and witness, lived together, and all contributed to their support.

Defendant testified: Berry Mills lived with him in 1894, and he stood Mills' security for supplies; that is, he took

Mills' obligation for $75 or $80 for supplies, and transferred and endorsed it to Campbell, and Mills got the supplies on it.    Campbell also took a mortgage from plaintiff for $15 to get supplies, and witness thinks Berry Mills signed this mortgage.    In the fall and winter of 1894 witness went with Berry, and when they sold cotton, had the same credited on the obligations Campbell held against Berry and plaintiff.    All was paid on said obligations but about $23.    When Campbell foreclosed his lien for supplies made by Berry to witness and transferred as above mentioned, Campbell transferred the foreclosed lien to witness, who had it levied, had the property of Berry Mills sold and got some money on it.    Witness bid the property in.    The lien papers and mortgage were lost.    After the property had been levied on, witness sued out two warrants against Berry and his son, for taking some of the corn that was covered by Campbell's lien, and had them arrested.    He agreed to release them if they would pay the balance due on the claims transferred to him by Campbell, when plaintiff surrendered or gave the two cows sued for to witness, which he took in satisfaction of said claims, he paying the cost of the warrants, and the criminal cases were dropped. Did not think the two cows were worth over $12; sold them some weeks afterwards for $12.—Lanceford, constable, testified: He levied the lien *fi. fa.* on the corn, cotton, etc., and sold it for a little over $20.    Hudgins bought it in, and paid the cost.    Witness served the warrants, and Hudgins said that if Mills and his son would pay the balance due him, he would discharge them.    Plaintiff was very anxious to have them discharged, to which Hudgins agreed and took the cow and calf sued for in satisfaction of his claim, paid the costs and dropped the prosecution.    She agreed the cows might go in that way.    The cows were not worth over $12 or $15.—Campbell testified: Some time in the first of 1894 Hudgins transferred a lien contract made by Berry Mills, by endorsement to witness, for Berry to get

supplies, about $60; and witness let Berry have supplies on it. Some time in the summer of 1894 plaintiff made another mortgage to witness for $15 to get supplies for herself and family. Witness thinks Berry signed it with her, but is not certain. The mortgage covered the cow sued for. Payments were made on the mortgage until it was paid and cancelled. Berry paid on the lien given in the spring for supplies until it was reduced to about $23. Witness foreclosed it in the winter, and transferred it to Hudgins.—There was further evidence for defendant that the cows were worth some $12 or $14.

*J. N. Glenn* and *W. M. Morrison*, for plaintiff.
*John A. Wimpy*, for defendant.