107  318
119  983

## JONES *v.* CRAWFORD.

1. A petition alleging that defendant is liable in damages to the plaintiff, a married woman, for fraudulently procuring her to sign, as coprincipal with another, a negotiable note payable to the defendant, when her undertaking was one of suretyship only, upon the express understanding that she should never be liable to pay the same, and that she was compelled by suit to pay the note to an innocent purchaser, who acquired the same before maturity for value in due course of trade, sets forth a cause of action.

2. A promissory note containing words of negotiability, executed since the passage of the act of 1891 (Civil Code, §3667), providing that contracts to pay attorney's fees in notes and like instruments shall be void unless a plea be filed by the defendant and not sustained, is negotiable, notwithstanding an agreement in the note "to pay all costs of collection including ten per cent. attorney's fees."

Argued March 24, — Decided April 21, 1899.

Action for damages.   Before Judge Harris.   City court of Cartersville.   June 9, 1898.

*John W. Akin,* for plaintiff in error.
*Neel & Neel,* contra.

COBB, J.   Mrs. Crawford sued Jones for damages, alleging in substance as follows: On March 10, 1897, petitioner was a married woman.   On that date Jones, holding some claim or demand against Thomas H. Cobb, a son of petitioner by a former husband, for which claim petitioner was in no way liable and had received no benefit therefrom, came to petitioner with a promissory note which had been signed by Cobb, payable to the order of Jones, for the sum of $230.50 principal, with interest at eight per cent. per annum, and "stipulating to pay all costs of collection including ten per cent. attorney's fees," and asked petitioner to sign the same as surety.   In order to induce her to do so defendant stated that Cobb had requested her to sign, and assured her "that he would never trouble her with the note and that she should never have to pay it."   On these statements petitioner consented to sign the note.   After signing her name she was about to add the word "surety" or "security," when the defendant begged her not to do that, saying that it was unnecessary, and "again assured her that the note would never be collected out of her."   After obtaining the signature of petitioner to the note the defendant, before its maturity, indorsed and transferred the same to L. S. Munford, who in turn transferred the note before maturity to F. M. Ford, receiver.   These two indorsements and transfers were made for value in due course of trade and without notice to either transferee that petitioner had any defense to the note. After the maturity of the note Ford demanded payment from petitioner, which was refused, because petitioner was ignorant at

that time of the fact that either of the above-mentioned indorsees had taken the note in due course of trade without notice of her defenses, but on the contrary believed that they did have such notice.   Upon her refusal to pay, Ford brought suit against both Cobb and petitioner as joint makers, to which suit petitioner filed pleas setting up that she signed the note as surety and was a married woman at the time of signing the same, and also that neither Ford nor Munford took the note in due course of trade for value, before maturity, without notice of her defenses.   Upon the trial of this suit petitioner established by uncontradicted evidence that she signed the note as surety and was a married woman at the time of signing the same; but failed to establish that Ford was not a bona fide holder before maturity, for value, and without notice of her defenses. Whereupon the jury returned a verdict against Cobb as principal and petitioner as security, for the principal of the note, together with interest and ten per cent. attorney's fees, on the sole ground that Ford was a bona fide holder for value, without notice of the defenses set up by the petitioner.   Upon this verdict judgment was entered against Cobb as principal and petitioner as security.   Execution was issued upon this judgment, and Cobb having no property out of which the money could be made, the execution was about to be levied upon property of petitioner.   Whereupon, to protect her property from levy and sale, petitioner procured certain persons to pay off the execution, for which she is bound to repay them.   Petitioner has demanded payment of this sum from the defendant, but he fails and refuses to pay the same.   It is alleged that in defending the suit above mentioned and also in prosecuting the present action petitioner has been put to considerable expense. It is further alleged and charged that Jones procured petitioner's signature to the note "by material misrepresentations as. hereinbefore set forth, and did so for the purpose and with the intention, at the time he procured the note, of indorsing and transferring the same before maturity, to an innocent purchaser thereof, for the sole purpose of depriving petitioner of her just defense to said note, which said Jones well knew she could and would set up and prove against him should he bring suit

on said note against her." Damages are laid in the sum of
four hundred dollars, which sum is made up of the amount
paid on the execution and the various items of expense peti-
tioner has incurred by reason of the suit against her on the
note and of the present action. The court overruled a general
demurrer to the plaintiff's petition, and the defendant excepted.

The exact question now before us is presented for the first
time in this State; and after a thorough investigation of the
authorities we have been unable to find any case exactly iden-
tical with the one now under consideration. When Mrs. Craw-
ford signed the note that had been previously signed by her
son, she was interested in no way whatever in the considera-
tion, and hence her signature imposed upon her no liability
under the law to any one who had notice of the fact that her
contract, though apparently that of a principal, was really one
of suretyship only. Jones being cognizant of these facts, the
paper was in his hands, so far as Mrs. Crawford was concerned,
absolutely worthless. Civil Code, § 2488. If Mrs. Crawford
had paid to Jones the full amount of this note, she would have
had the right to recover the same from him. *Mills* v. *Hudgins*,
97 *Ga.* 417; *Lewis* v. *Howell*, 98 *Ga.* 428. As she appeared
upon the face of the note to be a principal, and as she had a
right, under the law, to bind her separate estate by a contract
of this character, a purchaser of the note for value, before ma-
turity, and without notice of the fact that the contract was really
one of suretyship, would have a right to enforce payment of
the same. *Perkins* v. *Rowland*, 69 *Ga.* 661; *Strauss* v. *Friend*,
73 *Ga.* 782; *Building Association* v. *Perry*, 103 *Ga.* 800, and
cases cited. The married woman would thus be compelled to
pay the innocent holder of the note, but in so doing she would
be discharging the obligation for the benefit of the payee who
had transferred the same. If, therefore, a married woman
could recover from the payee of the note, who had notice of the
invalidity of her contract, an amount paid to him in satisfac-
tion of the same, why should she not be allowed to recover from
him the amount he has wrongfully compelled her to pay out
for his benefit to another person? If Mrs. Crawford had at the
special instance and request of Jones voluntarily paid a sum

equal to the amount due on the note to a creditor of Jones, who had no notice of the invalidity of her contract, and Jones had then surrendered her note, under the principle of the cases above cited, there would be no legal obstacle to her bringing suit against Jones for the amount paid out for his benefit. If this is true, does it not necessarily follow that where she has been compelled to pay to a creditor of Jones, she would have a right to recover the amount thus extorted from her? Certainly would this be true when at the time the note was signed by her she attempted to sign in such a way that no liability would arise against her on the note in the hands of any one, but was prevented from doing so by the fraudulent statements made to her by Jones that he did not intend to use the note in any way whereby she would be held liable thereon, which was, in effect, an agreement that the note would never be negotiated. The subsequent negotiation of the note to an innocent purchaser, who, on account of the insolvency of the principal, compelled Mrs. Crawford to pay the amount due thereon, made complete a cause of action in her behalf against the payee, who had thus caused damage to her. The fraud in procuring and negotiating the note, followed by damage to the plaintiff on account of having to pay the same, made a cause of action against the defendant. Civil Code, § 3813. In the case of Metropolitan Railroad Company *v.* Kneeland (N. Y.), 8 L. R. A. 253, it appeared that Kneeland was president of the plaintiff company, but no salary was attached to his office and the plaintiff had never agreed to pay him any salary. The other defendants were directors in the plaintiff company, and without authority passed a resolution authorizing the president to use the credit of the company by issuing and negotiating its notes to pay a salary of $25,000 which the directors had voted in his favor. The notes were issued, and some of them came into the hands of bona fide purchasers for value, before maturity, and without notice of the purpose for which they were issued or of the want of authority of the directors to pass the resolution above referred to. The suit was brought to compel the defendants to pay the plaintiff the amount of the notes issued by them, or for such part of them as it would be liable to pay. It was

held that the action could be maintained, Vann, J., saying in the opinion: "These notes, as is here admitted, the plaintiff has become liable to pay, in consequence of the fraudulent conduct of those defendants. Thus the dead pieces of paper were, to this extent, given life and converted into contracts binding upon the company without its consent. . . We think that the cases relating to this subject rest upon the principle that a person who fraudulently places in circulation the negotiable instrument of another, whether made by him or by his apparent authority, and thereby renders him liable to pay the same to a bona fide purchaser, is guilty of a tort, and, in the absence of special circumstances diminishing its value, is presumptively liable to the injured party for the face value thereof." See also Lumber Co. v. Bank, 27 L. R. A. (Tenn.) 519; Decker v. Matthews, 12 N. Y. 313   Smith v. Cuff, 6 M. & S. 160; Horton v. Riley, 11 M. & W. 491; 2 Rand. Com. Paper, § 727.

It is contended, however, that it appears from the allegations in the petition that there is no liability, because the note was not negotiable; and therefore Mrs. Crawford could have successfully ended the suit thereon by a proper plea. The petition alleged that the note was payable to the order of the payee, which would make it negotiable by indorsement; but counsel for plaintiff in error contends that the stipulation in the note for the payment of attorney's fees renders the note non-negotiable. It was held in *Stapleton* v. *Bank*, 95 *Ga.* 802, that "The fact that a promissory note payable to the order of a named payee contains a stipulation to pay 'all costs and ten per cent. on amount for counsel fees, if placed in the hands of an attorney for suit,' does not destroy its character as a negotiable instrument." It is contended, however, that that decision will not control in the present case, because the note upon which Mrs. Crawford was sued was executed after the passage of the act of 1891, now embodied in Civil Code, § 3667, providing that contracts to pay attorney's fees in notes or like instruments shall be void unless a plea or pleas be filed by the defendant and not sustained. The contract in the case cited authorized the collection of attorney's fees upon a condition, that is, if the note was "placed in the hands of an attorney for suit," and

this condition was held not to destroy the negotiability of the note.    The effect of the act referred to was to declare that contracts to pay attorney's fees in notes and like instruments should be collectible only upon the happening of one condition, that is, that a plea be filed by the defendant and the same be not sustained.    There is no difference in principle between this condition and the condition dealt with in the case cited; and for that reason the decision is controlling on the question now under consideration.    The reasons which constrained the court in that case to hold that the note contained a promise to pay "a specific amount of money" are also applicable in the present case.

As against a general demurrer the petition set forth a cause of action against the defendant, and there was no error in overruling such a demurrer.    A demurrer of this character does not raise the question as to what would be the measure of damages in such a case; and whether or not the plaintiff would be entitled to recover the amounts she has expended or become liable for as attorney's fees, by reason of the suit brought against her on the note and in bringing the present action, is not now decided.      *Judgment affirmed.    All the Justices concurring.*