28846. O'CONNOR *et al. v.* DeLOACH.

Decided June 5, 1941. Rehearing denied July 25, 1941.

*P. M. Anderson,* for plaintiffs in error.   *S. T. Brewton,* contra.

STEPHENS, P. J. Mrs. L. E. DeLoach brought suit against J. A. Thigpen and J. B. O'Connor, doing business as O'Connor Motor Company, and against them individually, to recover $851 and interest from April 4, 1939, at 7 per cent. per annum, the petition alleging that the amount of $851 was received by the defendants from her separate estate in payment of the debts of her husband, L. E. DeLoach; that on January 13, 1930, she acquired by purchase from her husband a certain described tract of land, since which date she has occupied the same as her home, known to the defendants, and that for a number of years before 1938 her husband did considerable business with the defendants and became indebted to them in an amount unknown to the plaintiff; that during the year 1936 or 1937 defendants or one of them indorsed a note for her husband, which plaintiff understands was in the amount of $300, payable to the Claxton National Bank or the Claxton State Bank, which it is the understanding of the plaintiff the bank required the indorser to pay, her husband thereby becoming indebted to said indorser in the amount paid; that no part of the account with O'Connor Motor Company contracted by her husband and no part of the debt represented by the note of $300 which was paid by O'Connor Motor Company or J. A. Thigpen for her husband was the debt or obligation of the plaintiff but was that of her husband; that her husband became insolvent in 1936 or 1937, and after said note was paid the defendants learned that he had no property with which to secure the payment of said note and his account, and J. A. Thigpen, representing the O'Connor Motor Company, proposed that the plaintiff secure the payment of the amount paid on said note of $300 by pledging her separate property hereinbefore mentioned with O'Connor Motor Company as security until her husband could himself pay said amount; that she relied on the promises made to her and the assurance that she would have no part of the amount to pay and that her property would not be subjected to the payment of said amount for which she pledged her property as security for the debt of her husband; that on or about September 7, 1937, an employee of O'Connor Motor Company came to her home with a note and deed to secure debt already prepared, and presented the same to her to be signed; that she signed the note and deed covering her property hereinbefore mentioned, believing that she was giving security for the debt

of her husband as represented by the $300 note paid by the defendants; that in August, 1938, just before her note was due, she learned that she had given a note for the principal sum of $726.64, payable to O'Connor Motor Company, due September 1, 1938, and a deed, covering her home, to secure the payment thereof; that O'Connor Motor Company was at that time a creditor of her husband and that the plaintiff received no consideratoin for signing said note or deed, both of which represented debts that her husband owed before the note and deed were given; that at the time she signed the note and deed the defendants knew they were given as security for the debts of her husband, and that the property pledged was plaintiff's in her own right and was not subject to the payment of the debts attempted to be secured and from which she had received no consideration; that immediately after she gave said note and deed the defendants tried to sell the same to the Glenville Bank, and, when they failed to do so, obtained a loan from the bank and pledged said note and deed as collateral security for their note then given to the bank; that the procuring of said note and deed from the plaintiff was a scheme of the defendants to subject her separate estate to the payment of her husband's debts to them, and the loan obtained from the bank was a further scheme by the defendants to get plaintiff's note and deed into the hands of an innocent party before maturity and to thereby place themselves in a position to satisfy, out of the property of the plaintiff, the debts due them by her husband; that the property of plaintiff secured by the deed was sold by forced sale on April 4, 1939, by the Glenville Bank under the power given therein, and that the plaintiff bid in said property for the sum of $851, in an effort to save her home, and obtained a loan on said property and paid the amount of her bid; that the Glenville Bank never purchased said note and deed of the plaintiff and never had anything invested therein, and the defendants received the amount of her bid, $851, out of her separate estate, which was paid on the debts of her husband, and said payment was made by her against her wishes and her will and by the forced sale of her home with the full knowledge of the defendants, and the funds received by them were assets of her separate estate and were applied on her husband's debts which were due before the execution of the said note and deed by her to the defendants; that no part of said debts were plaintiff's debts and she had

never assumed the payment of any part thereof, or agreed to pay any part thereof, and received no part of the consideration for the note and deed given the defendants; that the defendants had full knowledge that plaintiff was a married woman, that the debts due them were those of her husband, and that the security given them by her was her own separate estate and given without consideration as an accommodation surety, and the funds received by the defendants in payment of the debts of her husband were funds of the separate estate of the plaintiff; that the Glenville Bank, in the sale of her home, acted in accordance with the instructions and directions of the defendants and for the benefit of the defendants, and that the defendants received the amount, or the benefit of the amount, paid by her in the purchase of her home on April 4, 1939; that the defendants had full knowledge of the facts herein stated, and their acts were prompted for the sole purpose of collecting the debts of the plaintiff's husband out of the assets of her separate estate.

The defendants filed an answer denying liability and alleging that they were not parties to any scheme to subject the property of the plaintiff to the payment of her husband's debts; that the husband was indebted to O'Connor Motor Company and told them that he had no property with which to secure the indebtedness except his home the deed to which was in his wife's name, but that he would see her and ascertain if she would sign a note and deed to secure the indebtedness; that shortly thereafter he reported to them that his wife had agreed to sign such papers, whereupon they had a note and deed prepared for her signature, which papers were taken to her by one of their employees for her signature, but that neither of the defendants at any time talked to her about signing the papers and no one by their authority spoke to her in reference thereto, and that the plaintiff at no time, before or since the said note fell due, said anything to any of the defendants in regard to said paper or denied to them her liability thereon; that neither of the defendants had knowledge that the property conveyed was the property of the plaintiff and that they inferred from what was stated to them by her husband that the title to the property was in the plaintiff's name for the purpose of putting it beyond reach of her husband's creditors; that they accepted the note and deed in good faith and in consideration thereof extended the time of

payment of the husband's indebtedness and refrained from proceeding to collect the indebtedness under such legal remedies as were available to them, thereby allowing other creditors of the husband to gain an advantage over them, all of which was well known to the plaintiff, and that she is estopped by her conduct from contending that the note and deed are invalid. They further alleged that the property in question was conveyed to her by the husband while insolvent, and for the purpose of hindering and delaying creditors, and was equitably his property at the time of the execution and delivery of the note and deed to them by the plaintiff; that they hypothecated the papers with the Glenville Bank but did not participate in the sale of the property under the power given in the security deed and did not receive any portion of the proceeds therefrom.

The defendants also demurred generally and specially to the petition, all of the grounds of which demurrer were overruled and the defendants excepted pendente lite. The case came on for trial and the evidence was substantially as follows: The plaintiff owned the property in question. Her husband owed a debt to the O'Connor Motor Company. She signed a note for $726.64, payable to O'Connor Motor Company, and in connection therewith executed a deed conveying the property in question as security for the note. These papers were brought to her home by two employees of the motor company. The husband called the plaintiff from the kitchen, and, without any request from either of the employees, she executed the note and deed in their presence and they signed as witnesses. The husband owed the O'Connor Motor Company $700 or more. According to his testimony, J. A. Thigpen, a member of the firm, suggested that he give security for the debt, and promised that, if given, an extension of time for the payment of his indebtedness would be granted; that he told Thigpen he had no property; that Thigpen suggested that he get his wife to give her note and a security deed, which he did; that he had sold to his wife the property which she conveyed and that at the time he conveyed to his wife he owed nothing which he could not pay and did not make the conveyance to her for the purpose of hindering and delaying creditors. According to the testimony of Thigpen, the husband owed approximately $725, including $300 paid on a note by Thigpen as indorser. The indebtedness being considerably past due, he requested pay-

ment or the giving of security. The husband stated that he had no property except his home which was in his wife's name, and Thigpen, knowing that the husband was heavily in debt and had been for some time, understood from his statement that he had placed the property in his wife's name to elude creditors, and that the execution of the note and deed by the wife was at the husband's suggestion, Tigpen not suggesting to him or any one that the wife make the deed.

The defendants tried to sell the paper to the Glenville Bank. The bank was unwilling to purchase, but made a loan of $700 to the O'Connor Motor Company, secured by the note and security deed of the plaintiff which were transferred to it. Upon default in payment of the collateral note the bank notified the defendants, and Thigpen suggested that counsel of the motor company handle the matter of sale of the property securing the note of the plaintiff. The property was duly advertised for sale. Mrs. DeLoach became the purchaser at the sale. The $851 bid by her was applied to the payment of the note, interest, and expenses of sale, and the remainder, as attorney's fees, was turned over to the attorney who conducted the sale. The plaintiff received a deed to the property. It was undisputed that the bank had acquired the paper securing their loan before maturity and without notice of any defense thereto by the plaintiff.

While it was alleged in the petition that the defendants transferred the papers to the bank in pursuance of a scheme to get them into the hands of an innocent purchaser, it was not shown by the evidence, or claimed by the plaintiff, that the bank had any notice that the plaintiff had pledged her property as security for her husband's debts, although it was admitted that the plaintiff sought to enjoin the sale of the property under the power of sale given in the deed and failed to prevail because it was not shown that the bank was not an innocent purchaser.

The jury returned a verdict in favor of the plaintiff for $726.64 plus interest from April 4, 1939. The defendants filed a motion for new trial which was overruled. The exceptions are to the judgments overruling the demurrers and the motion for new trial.

Where a note has been executed by a married woman in payment of her husband's debt to the payee, and the note is therefore, as against her, void, and the payee, knowing this, and with the inten-

tion of forcing collection out of the wife and thereby satisfying the husband's debt to the payee, transfers the note for value to a transferee in due course, who therefore acquires the note free from such defense by the wife, and the wife therefore, having no defense to the note on the ground that it was void as executed in payment of her husband's debt, makes payment of the note to the transferee, the payee has, by his conduct, committed a fraud upon the wife, to her damage to the extent of the money which she paid to the transferee. The wife therefore can maintain an action against the payee to recover this amount. *Jones* v. *Crawford*, 107 *Ga.* 318 (33 S. E. 51); *Detwiler* v. *Bainbridge Grocery Co.*, 119 *Ga.* 981 (47 S. E. 553).

The allegations of the petition, irrespective of the allegation that the funds collected by the defendants belonged to the plaintiff, showed such fraud and right to recover, and the evidence authorized findings of fact sustaining a cause of action as set out in the petition. The court therefore did not err in overruling the general demurrer to the petition. The special grounds of the motion for new trial are also without merit. The court did not err in overruling the motion. *Judgment affirmed. Felton, J., concurs.*

SUTTON, J., dissenting. ■ Under my view of this case, the petition failed to set out a cause of action, and the court erred in overruling the general demurrer thereto. This was not a suit for damages against the defendants for fraudulently procuring from the plaintiff a note and deed to secure the same for the payment of her husband's debt and then transferring said note and deed into the hands of an innocent purchaser and thereby preventing her from setting up her defense to said note and deed against such innocent holder thereof (see *Jones* v. *Crawford*, 107 *Ga.* 318, and *Detwiler* v. *Bainbridge Grocery Co.*, 119 *Ga.* 981, supra), but this was a suit for money had and received, as the petition plainly shows, on the theory that the defendants had in their hands money derived from the sale of her separate estate.

■ In my opinion the court erred in refusing, upon a timely written request, to charge the jury as follows: "I charge you further that, although you believe that the defendants in this case knew that the deed and the note in question were given by the wife for the debt of her husband, yet if you find that the Glenville Bank did not have such knowledge or notice and took the paper before

the maturity of the note in good faith for a valuable consideration the bank would have been protected against the right of the plaintiff to set up the invalidity of the papers. And the bank would in such circumstances have the right to sell the property conveyed by the deed and use the money derived from such sale in settling the note that it held against the defendants, and it could not be recovered by the wife from the defendants."

■ I think the court erred in charging the jury as follows: "If the property covered by the security deed was bona fide the property of the plaintiff, and if the debt secured or paid by that deed was the debt of L. E. DeLoach, and if the defendants knew that the plaintiff was a married woman when she made the note and deed to them, and if the Glenville Bank was an innocent transferee of the note and security deed upon a valuable consideration, before maturity, and without notice of any defense thereto, you should return a verdict in favor of the plaintiff for the amount you find that the defendants received or got the benefit of out of the proceeds of the sale of the property, with interest thereon at the rate of 7 per cent. per annum from the time of demand upon the defendants for the payment of same to the plaintiff, if there was demand." This was an incorrect statement of the law, and was not applicable to the pleadings and the evidence, and amounted to a direction of a verdict for the plaintiff.

■ The note and security deed given by the plaintiff were unenforceable by the defendants, as it is well settled that all contracts by a married woman whereby her separate property is pledged for the payment of her husband's debts are void (Code, §§ 53-502, 53-503); but the defendants borrowed money from the Glenville Bank and by written transfer pledged as security for the payment of the loan the note and deed which had been executed and delivered to them by the plaintiff. Admittedly the bank was an innocent purchaser and holder in due course. As such the bank's rights were superior to those of the plaintiff. The money received by the defendants on the loan from the bank was presumably applied towards the husband's debts. The loan from the bank was not paid by them. The note for $726.64 given by the plaintiff was unpaid, although the evidence shows that the bank made demand upon the plaintiff for payment. Thereafter the property conveyed by the plaintiff's security deed was sold at public outcry. The plaintiff

bid in the property for $851 and received a deed thereto. The proceeds of the sale did not belong to her or to the defendants, but to the bank to the extent of satisfying their claim for $725 loaned to the defendants. The overplus, after the payment of the bank's claim and advertising and other expenses of sale, was turned over to the attorney conducting the sale as his fee. The evidence does not show that the defendants received any of the proceeds. All they received was the amount of the loan which was made to them by the Glenville Bank at the time the plaintiff's note and deed were hypothecated with the bank. Hence, the contention of the plaintiff that the defendants received a sum of money *out of her separate estate* is not borne out by the evidence, and her suit, which is one based on money had and received, must fail.

This is not a case where the plaintiff sued for *damages* on the theory that another fraudulently procured her to pledge her separate estate for the payment of her husband's debts and by transferring her negotiable paper into the hands of an innocent purchaser prevented her from asserting against such innocent holder her rights to the property involved (see *Jones* v. *Crawford* and *Detwiler* v. *Bainbridge Grocery Co.,* supra), but is avowedly a suit for money had and received on the theory that the defendants had in their hands money which was derived from the sale of her separate estate. It is fundamental that a plaintiff must recover on the case as laid, and the evidence here wholly fails to support the allegations of the petition that the defendants received a sum of money from her separate estate. Accordingly, the verdict returned by the jury in favor of the plaintiff for $726.64 and interest was unauthorized.

The court erred in overruling the motion for new trial.