THE BANK OF NEW HANOVER v. MARY E. BRIDGERS, JOHN L. BRIDGERS and ROBERT N. BRIDGERS.

*Consideration— Contract—Endorsement—Purchaser—Notice— Married Women—Forbearance.*

1. The payment of a note executed by a married woman, with her husband, without any consideration enuring to her separate estate, cannot be enforced against her.

2. But if, after the termination of the disability of coverture, she executes renewal notes, whereby an extension of time is obtained, a sufficient consideration is created to render her liable.

3. An obligation given for or on account of a contemporaneous or pre-existing debt, suspends all right of action on such debt for the period of its duration, the agreement to forbear being a sufficient consideration.

4. A consideration to support a promise need not enure to the promissor—it is sufficient if it consists in a detriment to the person to whom the promise is made.

5. The absence of consideration will not prevail against an endorsee for value, and before maturity, without notice of that fact, unless it be shown that the instrument was executed under circumstances which raise a strong suspicion of fraud upon the maker, when the endorsee will be required to show how and upon what consideration he became the holder.

6. Giving successive notes for the same debt, not differing in legal effect, will be regarded as cumulative securities, and the creditor may sue on any preceding one, provided he has possession of the latter at the trial, to be surrendered.

*Spear* v. *Atkinson*, 1 Ired., 262; *French* v. *Barney*, Ibid., 219; *Tredwell* v. *Blount*, 86 N. C., 33; *Felton* v. *Reid*, 7 Jones, 269; *Harshaw* v. *McKesson*, 65 N. C., 688; *S. C.*, 66 N. C., 266; cited and approved).

CIVIL ACTION, tried before *Connor, Judge,* at Spring Term, 1887, of the Superior Court of NEW HANOVER county.

The complaint, in separate counts, is for the non-payment of two promissory notes, each in the sum of $3,333.91, made on the same day, May 8th, 1885, and maturing respectively on the 1st day of December and January following—executed by Mary E. Bridgers and John L. Bridgers to Robert R. Bridgers, and endorsed before becoming due to the plaintiff. On the notes partial specified payments are admitted to have been made, and the action is to recover the residue.

The defendant Mary E., in her answer admits that she signed both notes and that they came to the plaintiff by the payee for value, but denies her liability upon either, and in support of her defence alleges as follows: That in the year 1867, she intermarried with one John L. Bridgers, who died in January, 1884; that while the wife of the deceased, they and the defendant John L. Bridgers, on February 8th, 1883, made two other promissory notes to the same payee, by whom they were endorsed to and became the property of the plaintiff, one for $3,500, due November 20th, the other for $4,000, due December 20th, of the same year; that certain payments were made on them, and the notes described in the complaint were in renewal, and for the balance due on them at that time, and without further consideration as to her; and that by reason of her coverture when she signed the first notes, and the absence of any consideration for the renewal, she has incurred no obligation in the premises.

The other defendants answered and admitted the facts stated in the complaint, averring however, each of them, that he was a surety only—the endorser that he was a surety for both defendants, and the said John L., that he was a surety for the *feme* defendant. Thereupon the following issues were submitted to the jury, to all of which, except the two last, there was an affirmative response:

1. Was the defendant Mary E. Bridgers married to John L. Bridgers, Sr., in the year 1867.

2. Did the said John L. Bridgers die during the month of January, 1884.

3. Did the said Mary E. Bridgers, with her husband and the other defendants, execute the notes dated February 8th, 1883, and referred to in the answer.

4. Were the notes set out in the complaint given by the said Mary E. Bridgers and the other defendants in renewal of the said notes of February 8th, 1883.

5. Was the defendant Robt. R. Bridgers a surety of the other defendants.

6. Was the defendant John L. Bridgers a surety to the defendant Mary E. Bridgers.

7. Was the money for which the original notes were given, borrowed for the benefit of the separate estate of the defendant Mary E. Bridgers.

To which the jury responded " No."

8. Did the trustee Maricus J. Battle assent to the execution of said note.

To which the jury responded " No."

The defendant Mary E. Bridgers moved for judgment that she go without day and for her costs. The motion was refused and the defendant excepted.

Whereupon the plaintiff upon the verdict and facts set forth in the pleadings, moved for judgment against all the defendants, which was rendered and the defendant Mary E. Bridgers appealed.

*Mr. Geo. Davis,* for the plaintiff.

*Messrs. Thos. N. Hill* and *Thos. W. Strange,* for the defendants.

SMITH, C. J., (after stating the case). There can be no question upon the findings by the jury, that the appellant

incurred, in signing the note with her husband, no obligation which could have been legally enforced against her, and it is argued that she is not bound by that given in renewal, because there was no existing liability, and no further consideration to sustain the contract.

It is to be observed, that the notes now sued on, differ from the two former ones, in that the principal and deceased debtor is not a party to them, and in the extension of the time of payment for more than nine months, so that the new and superseding contracts have a consideration more than a mere naked promise to pay a subsisting debt, which as such, would be inoperative in creating a new obligation. The taking of the new security thus suspends the remedy upon the old, at least, as to those who united in executing it.

" There is no doubt that a negotiable bill or note," says Mr. DANIEL, " given for or on account of a cotemporaneous or pre-existing debt, and whether or not it be in renewal of a previous bill or note, suspends all right of action on such debt during its currency—that is, until it is dishonored by non-acceptance or non-payment." 2 Dan. Neg. Ins., §1272. "Where a man who has a judgment debt," is the language of the Court in *Baker* v. *Walker*, 14 Exch , 468, " takes from his debtor a promissory note for the amount, payable at a certain time, it must be inferred that he thereby enters into an agreement to suspend his remedy for that period, and if so, that is a good consideration for the giving of the note." To the same effect are *Putnam* v. *Lewis*, 8 Johns., 389; *Frisbie* v. *Larned*, 21 Wend., 450.

And so this Court held, that where one indebted by note gives a mortgage to the creditor for his security, upon the terms of an indulgence, there is an implied promise in accepting the mortgage to suspend action on the note. *Harshaw* v. *McKesson*, 65 N. C., 688; and it was also decided that the mortgage could not be foreclosed until the termination of the last credit. Same case, 66 N. C., 266.

A consideration to support a promise need not involve a benefit to the person promising ; it is equally sufficient when it consists in a detriment to the person to whom it is made.

Again, the appellant is not in a more favorable condition to contest her liability by reason of executing the notes under the disability of coverture, than she would be if she had had no connection with them, and can it admit of question that she, when *sui juris,* and with restored capacity to act and bind herself like any other person, may contract to pay a debt due from others on a stipulated forbearance for a fixed time given to those who are liable?

The case relied on by her counsel—*Felton* v. *Reid,* 7 Jones, 269—is not applicable, for there was no new consideration to sustain a promise for which the *feme* was not liable, and this is true of any other person whose contract is founded on no consideration.

Beyond and outside of this aspect of the case, the present plaintiff is an endorsee for value, taking, so far as the case discloses, without notice of the infirmity imputed to the instrument as emanating from the appellant. In such case, as a consideration is implied, the want of it cannot follow and defeat the notes, when the fact was unknown to the purchaser for value, or any indication sufficient to put him on inquiry, the note not having matured.

" In an action by the endorsee against an original party to a bill," the words are those of Mr. GREENLEAF, in Vol. II., §172 of his work on Evidence, " if it be shown on the part of the defendant, that the bill was made under duress, or that he was defrauded of it, or, if a strong suspicion of fraud be raised, the plaintiff will then be required to show under what circumstances and for what value he became the holder. It is, however, only in such cases that this proof will be demanded of the holder. *It will not be required when the defendant shows nothing more than* a mere absence or want of

consideration on his part."   1 Dan. Neg. Inst., §§814 and 815; Pars. Bills, pages 218 and 219 ; *French* v. *Barney*, 1 Ired., 219.

In the last case cited DANIEL, J., says: " He being the holder, the law implies, until something be shown to the contrary, that he gave value for it, or rather, came fairly and legally by it."

More recently the same proposition is ruled in *Tredwell* v. *Blount*, 86 N. C., 33.

It is true that the giving successive notes for the same debt, when not differing in legal effect, may be deemed cumulative securities for that debt, and the creditor may sue on a preceding one ; provided, if the latter be a negotiable note or bill, he has it in his possession at the trial, to surrender, as held in *Spear* v. *Atkinson*, 1 Ired., 262.   But the rule does not extend to cases like the present, where the new and substituted note varies essentially in its terms, and protracts the period of payment.   This becomes the contract until it is broken, and then the plaintiff is at liberty to fall back upon his former security.   In no aspect of the case, do we see how the appellant can claim exoneration from a liability assumed voluntarily, and when she had full legal capacity.

We must therefore affirm the judgment, and it is so ordered.

No error.                                                    Affirmed.