PEOPLE'S STATE BANK v. FLEMING–MORTON CO. et al.

(Court of Civil Appeals of Texas. Texarkana. Nov. 6, 1913.)

1. BILLS AND NOTES (§ 245*)—INDORSEMENT—SURETY—CONTRACT—CONSIDERATION.

A surety or indorser who becomes such after the delivery of the note, in the absence of a prior agreement contemplating his suretyship or indorsement and without any additional consideration, is not liable, but one who becomes a surety or indorser at the time of the renewal of a note, or when there is an extension in consideration of such indorsement, is bound; the contract extending the time being sufficient to support the surety's obligation to pay.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 558, 559; Dec. Dig. § 245.*]

2. BILLS AND NOTES (§ 226*) — INDORSEMENT BY SURETY—CONSIDERATION.

Where defendant K. signed a note as surety after delivery without any new or additional consideration but thereafter, on the maturity of the note, K. consented to an extension without any new or other indorsement, and but for such consent the time would not have been extended, such extension was a sufficient consideration for his indorsement and rendered him liable thereon.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 534–541; Dec. Dig. § 226.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from District Court, Jasper County; W. B. Powell, Judge.

Action by the People's State Bank against the Fleming-Morton Company and others. Judgment for defendant Giles McKinnon, and plaintiff appeals. Reversed and rendered.

H. C. Howell, of Jasper, for appellant. Smith & Blackshear, of Jasper, and F. J. & O. T. Duff, of Beaumont, for appellees.

HODGES, J. The appellant sued the Fleming-Morton Company, a private corporation, on three promissory notes aggregating $3,565.18, exclusive of interest and attorneys' fees. R. J. Morton, J. W. Fleming, and Giles McKinnon were also made parties defendant in the suit and a recovery sought against them as indorsers or sureties on some of the notes. Judgment by default was rendered against the Fleming-Morton Company and Morton and Fleming. Judgment was sought against Giles McKinnon on only one of the notes, amounting to $700, and which was executed July 19, 1911. He answered, pleading, among other defenses, a want of consideration for his indorsement of that note. The findings of fact and conclusions of law filed by the trial court sufficiently state the case and its disposition. These are as follows:

"(1) I find that the $700 note was executed and delivered by the defendant Fleming-Morton Company, a corporation, on July 19, 1911, the day it bears date, to plaintiff, the People's State Bank, to cover certain overdrafts of said Fleming-Morton Company on plaintiff bank, and I further find that said money was used and expended by said Fleming-Morton Company in the purchase and installation of machinery and fixtures in its electric light plant and planing mill at Kirbyville, Tex.

"(2) I find that said Fleming-Morton Company is the principal maker of said note, and that the defendant J. W. Fleming is a surety on said note.

"(3) I find that the defendant Giles McKinnon also indorsed said note by writing his name on the back thereof.

"(4) I find that the said Giles McKinnon indorsed said note at the request of defendant by J. W. Fleming Morton only a few days after it had been executed and delivered by said Fleming-Morton Company to plaintiff bank and before maturity thereof, but I find that said McKinnon nor Fleming-Morton Company never received any consideration or benefit for his said indorsement on said note; the time and note being completed before McKinnon indorsed it.

"(5) I find that, before the execution and delivery of said note by Fleming-Morton Company to plaintiff bank, the defendant Giles McKinnon was negotiating with said Fleming-Morton Company for the purchase of stock in said Fleming-Morton Company, and that such negotiations were pending between said parties at the time of the execution and delivery of said note by said Fleming-Morton Company to plaintiff bank, but the bank knew nothing of said negotiation.

"(6) I find that, previous to the indorsement of said note by defendant Giles McKinnon, he had acquired by purchase $500 stock in said Fleming-Morton Company and had been elected secretary of said company, and that at the time he so indorsed said note he and J. W. Fleming were in the bank, and the same he was the owner of said $500 stock, and was also the secretary of said company, and was drawing a salary of $75 per month from said company as such secretary; and I further find that the said Giles McKinnon continued as secretary of said Fleming-Morton Company until said company was placed in involuntary bankruptcy in December, 1911, and that he is still the owner of said $500 stock in said company and was entitled to participate in whatever dividends or profits earned by said company from the time he so acquired said stock and was elected secretary of said company and indorsed said note down to the time said company was placed in bankruptcy as aforesaid.

"(7) I find that the intentions and purposes of the said Fleming-Morton Company, plaintiff bank, and the said Giles McKinnon, in the indorsement of said note by him, the said Giles McKinnon, were to further secure the payment of said note.

"(8) I find that when said $700 note became due (that is to say, on October 19, 1911) the said note was at the request of said Fleming-Morton Company and by consent of said Giles McKinnon extended by plaintiff bank for 60 days, and that said extension would not have been granted by plaintiff bank but for the fact that said Giles McKinnon consented thereto.

"(9) I find that, from the time that the said Giles McKinnon indorsed said note down to within a few days past, he uniformly and repeatedly acknowledged and admitted his liability as a surety on said note, and that he never denied such liability until recently and after he had consulted with a lawyer, who advised him that he was not liable for the payment of said note.

"(10) I find that Fleming-Morton Company has frequently borrowed money from plaintiff bank before the defendant McKinnon was a stockholder in or officer of the corporation, and that this $700 had been secured by the Fleming-Morton Company and the note executed therefor and that after McKinnon became a stockholder in said company he gratuitously indorsed said note, intending at the time he did so to pay the same, but no consideration passed to or from him or the bank, and the loan and note given therefor was complete and had been for several days before the indorsement was made.

"Conclusion of Law.

"(1) I conclude as a matter of law that, the defendant Giles McKinnon not having indorsed said note until after it had been executed and delivered by Fleming-Morton Company to plaintiff bank and accepted by said bank, said Giles McKinnon was only a guarantor on said note; and, the evidence showing that he received no consideration or benefit from his said indorsement, he is not liable on said note in any capacity or for any amount, and he should therefore be released and discharged from liability on said note."

[1] The only question involved in this appeal is: Did the court commit an error under the facts found in holding that McKinnon was not liable on the $700 note? It seems to be well settled that a surety or indorser who becomes such after the execution and delivery of the note, in the absence of any prior agreement contemplating his suretyship or indorsement and without any additional consideration, is not liable. The consideration passing between the original parties at the time of the execution and delivery of the note is not sufficient. Jones v. Ritter, 32 Tex. 717; Simmang v. Farnsworth, 24 S. W. 541; Baker v. Wahrmund, 5 Tex. Civ. App. 268, 23 S. W. 1023; Savage v. National Bank, 112 Ala. 508, 20 South. 398. But one who becomes a surety or indorser at the time of the renewal of the note, or when an extension of the time for its payment is given, in consideration of such renewal or extension of time, is bound. The contract renewing or extending the time is sufficient to support the obligation of the surety or indorser to pay the note at the new date agreed upon. Hannay et al. v. Moody et al., 31 Tex. Civ. App. 88, 71 S. W. 325; Armstrong-Cator Co. v. Snyder, 15 Tex. Civ. App. 394, 39 S. W. 379; Fulton v. Loughlin, 118 Ind. 286, 20 N. E. 796; Bank v. Bridgers, 98 N. C. 67, 3 S. E. 826, 2 Am. St. Rep. 317; 1 Brandt on Suretyship and Guaranty, § 25.

[2] It is immaterial whether we regard McKinnon as an indorser or a guarantor when he wrote his name on the back of the note. In either event his right to avoid the contract for want of consideration would be the same. If, when the note matured, an extension of time for some definite period had been given either in the form of a new note or by an agreement of the parties to an extension of the present note, and had McKinnon at the time indorsed his name upon the new note, or the old note if the latter had been retained, in consideration of such extension he would be liable in whatever capacity he placed himself by such indorsement. But McKinnon did not indorse the note at the time the contract of extension was made. It may be that, when approached and asked for his consent to an extension, he was under the impression that he was bound by his prior signature. Both parties may have been under the impression that his consent to an extension of the time was necessary, not to create a new liability, but to preserve an existing one. The question here presented is: Was McKinnon's verbal consent to an extension of the note given at the time and under the circumstances shown by the evidence equivalent in law to an indorsement of his signature? The signature having been previously affixed, had McKinnon been fully aware of his true legal status with reference to the note, and had he desired to become liable in the future in order to secure the extension of time, it would not have been necessary for him to again sign his name. He could have adopted his former signature by agreeing to be thereafter bound by it. Certainly this would follow if McKinnon was fully aware of his true legal status at the time. There is nothing to indicate that he would have acted differently at the time the note was extended had he been apprised of the fact that he was not bound by his previous indorsement. We must therefore conclude that he would have acted as he did had he been perfectly familiar with all of his rights in the premises, and that he took the course he did for the purpose of procuring a benefit to the company with which he was connected.

The court's finding that the note was extended with the consent of McKinnon and that it would not have been so extended without his consent is evidently based upon the testimony of Tullos, the appellant's cashier, who contracted for the extension of the note. McKinnon disclaimed any recollection of having given his consent but would not deny that he had consented. When we go to the statement of facts we find that Tullos testified as follows on this subject: "I told McKinnon that he was an indorser on the note and asked him if it would be agreeable to extend it, and he said it was; that he was willing and anxious to do everything he possibly could to help Fleming-Morton Company out. That afternoon Mr. Morton, the treasurer of Fleming-Morton Company, paid the interest on this note in question and set it up 60 days." Again he says: "I would not under any circumstances have consented to extend that note as I did extend it without Mr. McKinnon's signature on it, and I did extend it in pursuance of that understanding and agreement." It appears from other portions of the testimony, which is uncontradicted in the record, that at the time this $700 note first matured the Fleming-Morton Company was financially embarrassed, was unable to meet its obligations, and it was necessary that the company obtain an extension of time or be subject to a suit upon the note. Looking to the testimony quoted above as the only basis for the court's finding upon this issue, we must treat his conclusions of fact as being as broad as

the only legitimate inferences from this testimony would warrant. If that be correct, it follows that the extension would not have been given without McKinnon's signature on the note. It would be unjust to the appellant to now permit him to deny liability. If he voluntarily, with possibly as much information as to his legal rights as the bank cashier possessed, agreed that his signature might remain on the note, and that, too, for the purpose of financially aiding the company, in which he was a stockholder and of whtch he was an officer, we think he should be held to his obligation and that there was a consideration for his continued connection with the note. We think the court erred in holding that McKinnon was not liable.

The judgment is therefore reversed and here rendered in favor of the appellant.