BONNER OIL CO. v. GAINES. (No. 6962.)*

(Court of Civil Appeals of Texas. Galveston. June 16, 1915. On Motion for Rehearing, Oct. 21, 1915.)

1. PRINCIPAL AND SURETY ☞35 — CREATION OF RELATION — CONSIDERATION—EXTENSION OF PAST-DUE INDEBTEDNESS.

A creditor's extension of the payment of a past-due indebtedness from a corporation upon receiving its 60 or 90 day notes would support a contract of suretyship evidenced by the indorsement of its president.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 68; Dec. Dig. ☞35.]

2. PAYMENT ☞7 — TIME—EXTENSION—PAST-DUE INDEBTEDNESS.

A creditor, extending a past-due indebtedness, by accepting the 60 and 90 day notes of a debtor conclusively bound himself not to collect the debt until the maturity of the notes.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 11; Dec. Dig. ☞7.]

On Motion for Rehearing.

3. APPEAL AND ERROR ☞493 — RECORD — SHOWING JURISDICTION.

A default judgment against a defendant will be reversed where the record fails to show service of citation, other than by the recital thereof in the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2282–2284; Dec. Dig. ☞493.]

4. APPEAL AND ERROR ☞880—PARTIES ENTITLED TO ALLEGE ERROR.

In an action against a corporation on its notes and against its president as surety thereon, where the surety's pleading did not seek any relief against the corporation by reason of his suretyship, and where the corporation did not appeal from a default judgment against it reversible on the ground that the record failed to show service against it, the surety could not raise the question of the want of a valid judgment against the corporation.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3584-3590; Dec. Dig. ☞880.]

5. APPEAL AND ERROR ☞724—ASSIGNMENTS OF ERROR—SUFFICIENCY.

Under Rev. St. 1911, art. 1612, requiring the plaintiff in error to file in the court below all assignments of error distinctly specifying the grounds on which he relies, and declaring that all other errors shall be waived, assignments sufficient to direct the appellate court's attention to the errors complained of were sufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2997-3001, 3022; Dec. Dig. ☞724.]

6. PRINCIPAL AND SURETY ☞163—JUDGMENT —RELIEF TO SURETY—PLEADING.

In an action against a corporation on its notes and against its president as surety thereon, where the surety sought no relief over against the corporation, a judgment against the surety was not required to be so framed as to subject the property of the principal to its satisfaction before proceeding against the surety for its collection.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 446-454; Dec. Dig. ☞163.]

Error from District Court, Harris County; Wm. Masterson, Judge.

Action by the Bonner Oil Company against the Lake Austin Canal Company and John W. Gaines. Judgment for plaintiff against the Canal Company and in favor of defendant Gaines, and plaintiff brings error. Reversed, and judgment rendered for plaintiff.

Hunt, Myer & Teagle and Rodman S. Cosby, all of Houston, for plaintiff in error. Gaines & Corbett, of Bay City, and Cole & Cole, of Houston, for defendant in error.

McMEANS, J. The Bonner Oil Company brought this suit against the Lake Austin Canal Company, a corporation, and John W. Gaines, on two promissory notes alleged to have been executed to it by the defendants, each for the sum of $445.20, dated February 3, 1914, bearing 8 per cent. per annum interest and maturing 60 and 90 days after date, respectively. The defendant Lake Austin Canal Company failed to appear and answer. The defendant Gaines answered, pleading want of consideration on his part for the execution of the notes which he alleged were given for a debt due by the canal company to plaintiff, and that he was not interested in such debt except as a stockholder in the defendant canal company. Plaintiff, in reply, pleaded that the execution of the notes by defendant Gaines was done for the purpose of securing an extension of time for the payment of the debt due by the canal company, and that therefore there was a valid consideration. To this the defendant Gaines replied that there was no specific agreement for the extension of time for the payment of the debt due by the canal company at the time he signed the notes, and that the plaintiff never requested him to sign the notes, and that the same were signed by him without request and without consideration. He also pleaded that the purpose of executing the notes was to settle all controversy as to the amount and validity of the debt due plaintiff by the canal company, and not for the purpose of securing an extension of time, or to limit the time within which plaintiff could sue on the debt. The case was tried before the court without a jury and resulted in a judgment by default against the defendant Lake Austin Canal Company for $990.40, together with $49.38 interest and $100.93 attorneys' fees, aggregating $1,143.67, and in favor of defendant John W. Gaines. From the judgment in favor of defendant Gaines, the plaintiff has prosecuted a writ of error to this court.

Appellant by several assignments of error complains, in different ways, of the action of the court in rendering judgment in favor of defendant Gaines; the gravamen of the complaint being that the undisputed evidence shows that the act of said Gaines in signing the notes sued upon was based on a sufficient consideration to render his promise to pay them a binding obligation upon his part.

The following is a statement of the material undisputed facts as shown by the record: The Lake Austin Canal Company was a corporation duly chartered under the laws of Texas, and at the time at which plaintiff's cause of action arose was, and so far as the record shows is now, a going concern. Its capital stock was $18,000, and was owned in equal amounts by defendant John W. Gaines, his son, C. M. Gaines, and Ed Savage. John W. Gaines was its president, and Ed Savage its secretary and general manager. The Bonner Oil Company, plaintiff, was engaged in selling lubricating oils; and in endeavoring to make sales to the Lake Austin Canal Company, its agent, Mr. J. H. Bland, called upon Mr. Savage and solicited him to buy, and was referred by Savage to Mr. Gaines, and after talking the matter over with Mr. Gaines the latter told the agent to go back to Mr. Savage and tell him to order what he wanted. Savage thereafter ordered from time to time oil in such quantities as he desired, the value of which amounted to $890.40, no part of which was ever paid. Afterwards the Bonner Oil Company began trying to collect this sum, and to this end its said agent, Bland, went to Bay City, where the principal office of the corporation was located, and where the defendant Gaines lived, to see Mr. Gaines with ref-

erence to payment; but Mr. Gaines was away, and Bland did not then see him. Later he again went to Bay City for the purpose of making a collection, his purpose being to either collect the amount due, or a part of it, or to close the account with notes, and carried with him blank notes to be filled out and executed, in the event the amount was not paid. He called upon Mr. Gaines at his office, and the latter, after Mr. Bland had stated that his purpose in calling was to get some money on the debt, stated to Bland that the corporation had not sold its rice at that time, and that they had had bad luck, whereupon Bland presented the blank notes which were filled out for equal amounts, aggregating the amount of the debt, and were signed by the corporation by Mr. Gaines as its president and also signed by him in his individual capacity, and as thus signed were handed to Mr. Bland. Bland testified that when he handed the notes to Gaines for execution he said to him, in substance:

"Mr. Gaines, we would be glad to have the notes, because they will help us out with the bank; we might be able to handle the notes at the bank, and get the money, and if we can accommodate you, we will do it in that way."

He further testified that, when Gaines returned the notes to him after signing them, he stated:

"Mr. Bland, I am doing this for you, I don't for the company; I don't often do this, or this is something I haven't often done, or something to that effect, and I thanked him for it, and said I appreciated it very much that he did do it."

He further testified:

"If Mr. Gaines had simply given me two notes of the corporation, and had not executed the notes himself, I would not have accepted them."

He did not request Mr. Gaines to sign the notes individually, nor did he tell him that he would not accept the notes of the corporation without his individual signature.

Mr. Gaines, testifying as to the circumstances under which he signed the notes, stated:

"Mr. Bland came into the office and told me, as he stated, that the company needed the notes, or could use the notes, or something to that effect, and they asked to close the account with a note, or two notes, divided into two equal amounts, and make them payable 60 and 90 days after date, and after discussing it a little while we agreed to that. The purpose, as stated by Mr. Bland, was just to enable them to use the paper as collateral at the bank, that they might do it; he didn't say they would do it; he said they might need them, and that if they did they could use them to hypothecate them with the bank to obtain advances. That was the sole reason assigned for wanting the account settled by notes."

He further testified:

"I have been puzzled several times myself just why I did sign the paper at the time, to tell you the honest truth, and I couldn't tell you to this day why I did it. I don't know why I indorsed that paper. * * * It is a mystery to me."

After the note, which matured 60 days after its date, fell due, defendant Gaines wrote to the plaintiff asking for a further extension of time in which to pay the same. In this letter, which is dated April 27, 1914, he says:

"In this connection I wish to say that if you will do so (extend time of payment until fall) the Lake Austin Canal Company will very much appreciate you carrying this account over until fall, as it is practically impossible for them to pay it at this time, and get through this season's work. I will re-indorse this paper, payable in the fall, and if you will do as above suggested, it will be a great accommodation to me and to the canal company."

It is undisputed that the debt was due at the time the notes were executed, and that the time of payment was extended 60 and 90 days by the giving of the notes.

Under the facts as above stated, the court held that the signing of the notes by John W. Gaines was without consideration, and upon this view rendered judgment in his favor; and in so doing, we think, committed error.

[1] When Mr. Bland accepted the notes by which the time of payment of the debt was extended 60 and 90 days, Mr. Gaines had signed his name thereto as surety. Mr. Bland did not request him to become surety upon the notes in so many words, but that he expected Mr. Gaines to sign them is shown by his uncontradicted testimony that he would not have accepted them had not Mr. Gaines so signed them. The corporation desired further time for payment, and hence was willing to execute the notes which bore 8 per cent. interest in lieu of the debt which drew less interest, if any at all. Mr. Gaines, for his corporation, desired that the extension be granted, and was willing to and did sign his name to the notes which effectuated the extension. That he considered himself bound as a surety is conclusively shown, we think, by his letter written after the note first maturing fell due, in which he requested a further extension of time of payment until fall and agreeing to re-indorse the note if the corporation would grant such extension.

[2] It seems to be well settled that the extension of time of past-due indebtedness will support a contract of suretyship. The plaintiff made no express promise to Gaines to forbear to sue, or to extend the time of payment. The negotiations were brief, consisting of a demand upon Gaines, as president of the debtor corporation, for payment of a past-due debt, a statement by him of the inability of the corporation to pay it and the reason why, the production of the notes and their execution by Gaines for his principal and himself, and the return to and acceptance thereof by Bland. The execution of the notes amounted to an extension of time by the plaintiff, but the notes would not have been accepted and the time extended if Mr. Gaines had not signed them individually. By accepting the notes the plaintiff conclusively bound itself not to collect

the debt until the maturity of the notes. It parted with its absolute right to sue and collect at once. Hannay v. Moody, 31 Tex. Civ. App. 88, 71 S. W. 325.

In 2 Pars. Con. (6th Ed.) p. 5, it is said: "If the original debt or obligation is already incurred or undertaken previous to the collateral undertaking, then there must be a new and distinct consideration to sustain the guaranty. * * * It is not necessary that any consideration pass from the one receiving the guaranty to the party giving it. If the party for whom the guaranty is given receive a benefit, or the party to whom it is given receive an injury, in consequence of the guaranty, and as its inducement, this is a sufficient consideration."

So in 1 Pars. Cont., p. 443, it is said a waiver of any legal or equitable right is a sufficient consideration for a promise.

In Hannay v. Moody, supra, a case quite similar in many of its material facts to the present, this court said:

"By the acceptance of the notes, which, by their terms. were not payable until the lapse of 90 days, Moody & Co. effectually bound themselves not to collect it earlier, and thus abandoned their legal right to proceed at once against their debtor. The inference from these facts is a conclusion of law which they could not be heard to question except on the ground of fraud or mistake. That they might have proceeded in attachment sooner than the due date, if sufficient grounds existed, can make no difference. They parted with their absolute right to sue and collect at once, and had left to them the right to sue only under extraordinary conditions."

And it was held that the contract of the sureties, who signed the notes there sued upon, was binding upon them, although the only consideration therefor was the extension of time of payment of the past-due indebtedness of their principal.

In Thompson v. Gray, 63 Me. 230, cited in Hannay v. Moody, after holding that a promissory note given by one person for the antecedent debt of another is not void for want of consideration, if it is made payable at a future day, says:

"Such a note necessarily operates as a suspension of the right of the creditor to enforce payment of his debt till the note matures; and it is a rule of law too well settled to require the citation of authorities in support of it that such a suspension of the right of the creditor to enforce payment of his debt is a sufficient consideration for the promise of a third person to pay it. It is not necessary that there should be an express agreement for delay. The taking of a new security payable at a future day, by operation of law, and without any special agreement to that effect, imposes upon the creditor the duty of waiting for his pay till the new security matures."

To the same effect are York v. Pearson, 63 Me. 587; Fulton v. Loughlin, 118 Ind. 289, 20 N. E. 796; and Bank v. Bridgers, 98 N. C. 67, 3 S. E. 826, 2 Am. St. Rep. 317.

In Fulton v. Loughlin, supra, it is said:

"But a promissory note negotiable according to the law merchant, is not void for want of consideration, if it be given for the antecedent debt of a third person and be made payable at a future day. Such a note operates to satisfy the debt, prima facie, or at least to suspend the right of the creditor to enforce payment until the note matures, and an express or implied

179 S.W.—44

agreement to delay the collection of a precedent debt is a sufficient consideration to support the promise of a third person."

From the facts stated and the authorities quoted it follows, we think, that John W. Gaines, by executing the notes for the debt of the Lake Austin Canal Company, bound himself, upon a sufficient consideration, to pay them, and therefore that the judgment in his favor was erroneous, and should be set aside, and that judgment should be here rendered in favor of the Bonner Oil Company against him on said notes for the principal, interest, and attorneys' fees, and it has been so ordered.

Reversed and rendered.

### On Motion for Rehearing.

In his motion for rehearing, defendant in error, Gaines, contends that the action of this court in reversing the judgment of the court below in his favor, and in here rendering judgment against him, was erroneous for the reason that the record does not show that the trial court had jurisdiction to render judgment against his codefendant, the Lake Austin Canal Company; and, the judgment of this court being against him as a surety on the note of the canal company, no judgment could be rendered against him as a surety without a valid judgment against the canal company to support it. His contention that the record fails to show that the trial court had jurisdiction to render judgment against the canal company is based upon the fact that judgment was rendered against said company by default, and the record fails to disclose that the canal company had been served with citation, other than by the recital of that fact in the judgment itself.

[3] If, in these circumstances, the Lake Austin Canal Company had appealed, we would have felt, under the rules laid down in the following cases, that it was our duty to reverse the judgment against it: Daugherty v. Powell, 139 S. W. 625; McMickle v. Texarkana Nat. Bank, 4 Tex. Civ. App. 210, 23 S. W. 428; Glasscock v. Barnard, 125 S. W. 615; Mayhew v. Harrell, 57 Tex. Civ. App. 509, 122 S. W. 957; Wheeler v. Phillips, 22 S. W. 543.

[4] But the Lake Austin Canal Company did not appeal from the judgment against it, and Mr. Gaines not having, in his pleadings, sought any relief against the canal company by reason of his suretyship, the question raised cannot be presented for the canal company by its codefendant, Gaines, and is not therefore properly before us for review.

[5] He further contends that this court erred in considering the assignments of error presented by the plaintiff in error, for the reason that such assignments do not present, for the consideration of this court, the questions considered and determined by it. A similar contention was raised by the defendant in error in his brief and considered by the court in passing upon the case, and it was our conclusion then, and is now, that the ob-

jections to the assignments of error were untenable. The assignments are not as clear as they might be, but we then thought, and now think, they are sufficient to direct our attention to the errors complained of, and under article 1612, Revised Statutes, 1911, this was sufficient.

[6] Defendant in error further contends that, this court having rendered judgment against him as a surety for the canal company, the judgment should have been so framed as to first subject the property of the canal company to its satisfaction before proceeding against him for its collection. The answer to this is that no such relief was sought by his pleadings in the lower court, nor by him in his brief in this court.

Upon the merits of the case we will not add to what was said in our main opinion, other than that a further investigation has satisfied us of the correctness of the conclusions there stated; and in further support of the opinion cite the recent case of People's State Bank v. Fleming-Morton Co., 160 S. W. 648.

The motion is overruled.