## TAYLOR v. NATIONAL BANK OF DAKOTA *et al.*

1. The obligation of a party to a negotiable instrument may be extinguished "in like manner with that of parties to contracts in general." Comp. Laws, ¿ 4515.

2. A party to a contract may rescind the same "if the consent of the party rescinding * * * was obtained * * * through fraud * * *, exercised by or with the connivance of the party as to whom he rescinds." Comp. Laws, ¿ 3589.

3. The complaint alleged that S., the president and managing officer of the defendant bank, sold to plaintiff certain shares of the capital stock of

said bank, of which he was owner, upon the strength of false and fraudulent representations as to the condition of the bank, for which plaintiff was to give him promissory notes of himself and his wife; that at the request of said S., such notes were made payable to the said defendant bank, and delivered to S.; that, immediately thereafter, said bank, with full knowledge of the false and fraudulent representations by which they were procured, took and accepted such notes in exchange for notes held by it against said S. and members of his family. *Held,* that, both as to said S. and the defendant bank, such notes were delivered and became operative as such.

4. Upon such facts, *held*, further, that, other necessary conditions existing, the bank was not such holder of said notes as would defeat plaintiff's right to rescind the contract of purchase and recover the said notes.

5. As against a demurrer, the express allegations of the complaint that plaintiff gave notice of his intention and election to rescind "as soon as he learned the true condition of the bank" shows a full discharge of his duty as to time.

(Syllabus by the court. Opinion filed Feb. 2, 1895.)

Appeal from circuit court, Beadle county. Hon. A. W. Campbell, Judge.

Action for a rescission of a contract of purchase of stock of defendant bank. From an order overruling a demurrer to the complaint, defendant bank appeals. Affirmed.

The facts are stated in the opinion.

*T. H. Null,* for appellant.

*William A. Lynch,* for respondent.

Kellam, J. The complaint in this action is quite lengthy, but, for the purpose of a discussion of all the questions raised and argued on this demurrer, the following condensed statement will probably sufficiently present the facts stated in the complaint: Defendant Stick was a stockholder in, and the president and active manager of, the National Bank of Dakota, a duly organized national bank at Huron. In August, 1889, he sold to plaintiff, Taylor, 90 shares of the capital stock of said bank, under and upon the strength of certain false and fraudulent representations to Taylor as to the condition of the bank, its business and its assets. That, in payment therefor, Taylor

paid to Stick $1,000 in cash, "and executed to him one note of $5,000, signed by himself, and delivered to him one note of $3,350 and one note of $1,000, signed by Josephine Taylor, plaintiff's wife, all of said notes dated August 12, 1889, and drawing interest at the rate of 10 per cent. per annum. That said notes were, at the request of said defendant Stick, made payable to the National Bank of Dakota, the other defendant herein, but the same were delivered to defendant Stick, and were so delivered to him as part payment of said stock." "That subsequent to the execution and delivery of the notes to defendant Stick, in payment of said stock, as hereinbefore stated, and at about the time of their delivery to him, he placed the same with the defendant bank herein. That the only consideration moving between said bank and the defendant Stick for said notes were certain notes held by said bank against defendant Stick and members of his family, as plaintiff is advised and believes; and that the entire transaction between said bank and said Stick in substituting the notes of plaintiff and his wife in said bank for the notes of said defendant Stick and his family was done by said defendant Stick acting as the president of said bank; and that said bank took said notes so executed by plaintiff and his wife, Josephine Taylor, as hereinbefore stated, with full notice and knowledge of all the false and fraudulent statements and representations so made to plaintiff by said defendant Stick, as hereinbefore stated, and with full notice and knowledge that said notes were obtained from this plaintiff by said defendant Stick through said false and fraudulent statements and representations aforesaid, and in no other way. That plaintiff did not immediately discover the false and fraudulent character of the representations inducing the execution and delivery of said notes, and from time to time paid advanced interest, and executed renewals thereof, at the request of said defendant Stick, as the president of said bank; but that no interest has been paid and no renewals of said notes have been

made by plaintiff since his discovery of said fraud, and of being advised of his rights to rescind said contract. And plaintiff avers that such renewals were not in payment of said notes, but simply and solely in renewal thereof.    *    *    *    That defendant bank still holds said notes, claiming to be a holder in good faith and for value." To this complaint the defendant bank demurred, on the ground that it does not state a cause of action against the bank. This appeal is from an order overruling such demurrer.

The obligation of a party to a negotiable instrument may be extinguished "in like manner with that of parties to contracts in general." Comp. Laws, Sec. 4515. A party to a contract may rescind the same "if the consent of the party rescinding    *    *    *    was obtained    *    *    *    through fraud,    *    *    *    exercised by or with the connivance of the party as to whom he rescinds." Id. Sec. 3589. In this case Taylor seeks to enforce a rescission of his contract of purchase of the stock, and to recover from the appellant bank both his own and his wife's notes, given in part payment for such stock.

Appellants's first proposition in support of the claim that the complaint does not state a cause of action is a double one, and is thus stated in his brief: "The notes never had any legal existence, and could not have been the subject of an action, until they had been discounted to this defendant. The passing of the notes to Stick, a person not named or intended as payee, was not a good delivery, and gave no vitality to the notes." If we apprehend appellant's thought, it is that, the notes being made payable to the bank, a delivery to Stick did not vitalize them, and that, never having become operative notes for want of delivery, they have never become the subjects of discount, and consequently the bank never has discounted them. This conclusion is neither tenable nor available to appellant. By the terms of the purchase, Stick was entitled to these notes from Taylor. At Stick's instance and request, they were made payable to the bank, instead of himself. They were so made,

and then passed over to him. Everything was done necessary to constitute a delivery. Taylor intended to give, and Stick intended to take, and the delivery was complete. What would have been the rights, or remedies of the parties if the bank had refused to take the notes so made payable to it is an independent question, and does not arise here; but, accepting the allegations of the complaint as admitted, appellant cannot occupy the position indicated, for it is distinctly alleged that the bank did accept and discount said notes, and claims to be the *bona fide* holder of the same for value. It cannot admit these allegations to be true, and at the same time insist that the notes have no vitality or legal existence, because never delivered.

In the cases cited by appellant in support of the proposition under consideration, the notes were made for the purpose of discount at a designated bank, but upon presentation to said bank it refused to take them,—in this respect precisely the reverse of the fact in this case. In the cited case of Prescott v. Brinsley, 6 Cush. 233, the court held that, as to the sureties, the purpose of making the note was never accomplished, and that the subsequent unauthorized use of the note by the principal was not binding upon the sureties. The note was by its terms payable to the bank at which it was to have been discounted. Upon the refusal of the bank to take it, the principal maker, without the knowledge or consent of its sureties, made other use of it. The court held that the sureties were not bound. The facts in the other cited cases of President, etc., of Mechanics' Bank v. Ross, 1 Blackf. 316, and First Nat. Bank v. Strang, 72 Ill. 559, were substantially the same, except that the parties who were held not to be bound were not sureties, but principal makers, whose notes, after refusal by the bank to which they were made payable, and at which they were to be discounted, were, without their consent, sold to other parties. It will thus be seen that the very fact upon which the foregoing cases turned, to wit, the non acceptance by the banks named as payees, and the consequent defeat of the very conditions upon

which the notes were to become operative, is not only lacking in this case, but the very reverse is expressly shown, to wit, that the bank named as payee did accept the notes, and still holds them.   The notes were given to Stick by Taylor in partial payment for the stock.   Stick could not disconnect himself from the transaction by having the notes made payable to the bank, nor would it relieve the bank of the consequences of Stick's fraud, of which it had full knowledge when it took the notes, that Stick's name did not appear as a party of the notes. A fair inference, encouraged and apparently supported by other facts alleged in the complaint, is that Stick, either acting for the bank himself, or by arrangement with other agents of the bank, took these notes in the name of the bank as payee, for the purpose of turning them in to the bank without his indorsement, in payment of notes of himself and other members of his family held by the bank; but, whether this were the purpose or not, the legal effect of the facts stated must be the same.

Appellant further says:   "In this transaction Stick's knowledge of the fraud which he had perpetrated upon plaintiff is not charged to the bank, and hence the bank did not take the note with notice."   But this is directly in the face of the allegation of the complaint "that said bank took said notes * * * with full notice and knowledge of all the false and fraudulent statements and representations so made to plaintiff by said defendant Stick * * * and with full notice and knowledge that said notes were obtained from the plaintiff by said defendant Stick, through said false and fradulent statements and representations aforesaid, and in no other way."   We cannot assume, as appellant argues, that the bank's only notice or knowledge was that of its president, Stick.   The allegation is general that the bank had "full notice and kdowledge," and, for the purposes of this demurrer, this must be treated as admitted.   If, upon the trial, it turns out that it had no other notice or knowledge than such as should be imputed to it from the knowledge of Stick, it will then have to be determined

whether, under the circumstances, Stick's knowledge was the bank's knowledge; but the pleadings do not present that question.

The complaint alleges that these notes were obtained from Taylor through the fraudulent statements of Stick, and that, at his request they were made payable to the bank of which he was the president, and that the bank, with full knowledge of such fraud and that the notes were so obtained, took the same. Such facts, if proved and unexplained, would place the bank in *pari delicto* with Stick. If, upon the facts stated in the complaint, Taylor could make the same defense against these notes in the hands of the bank as in the hands of Stick, we are unable to see why his right to rescind was and is not the same against both. "The rights of a party who has been defrauded in making a contract are, on the discovery of the fraud within a reasonable time, to rescind the contract and restore the parties to their former condition, or to affirm the contract and claim compensation or damages for the injury he has sustained by reason of the fraud." Herrin v. Libbey, 36 Me. 357. See also note to Tarkington v. Purvis (Ind. Sup.) 25 N. E. 879, and cases there cited. Upon the facts stated in the complaint, Taylor would have been entitled to rescind as against Stick if the notes had been taken to and held by him. He would have the same right as against the bank, unless it took the notes as an innocent holder for value. Bank v. Taylor (S. D.) 58 N. W. 297, and cases cited. Having, as alleged in the complaint, taken the notes with full knowledge of Stick's fraud, it cannot be treated as an innocent party, whose rights would stand in the way of rescission. Whether plaintiff, Taylor, asserted his right and election to rescind within a reasonable time after the discovery of the alleged fraud, may be a question to be litigated in the trial; but the express allegations of the complaint that he gave notice of his intention and election to rescind "as soon as he learned the true condition of the bank" would, if proved, show a full discharge of his duty as to time.

We think the demurrer was properly overruled, and the order appealed from is affirmed. All the judges concur.