## LYONS v. WESTWATER.

(Circuit Court of Appeals, Third Circuit. September 28, 1910.)

No. 1,332.

1. ESTOPPEL (§ 63*)—NATIONAL BANKS—SUBSCRIPTIONS TO STOCK—LIABILITY OF STOCKHOLDERS.

Officers of a national bank may not hold themselves out to the Comptroller of the Currency, the bank examiners, and the business public as original subscribers for and holders of its capital stock, which they have never paid for, and yet escape liability on obligations given for such stock by a secret agreement among them that the stock shall be considered as belonging to the bank, and not to the one to whom it is issued.

[Ed. Note.—For other cases, see Estoppel, Dec. Dig. § 63.*]

2. BILLS AND NOTES (§§ 49, 537*)—ACCOMMODATION NOTES—LIABILITY TO BANK AS INDORSEE.

A national bank desired to increase its capital stock, and, having failed to sell the entire issue, which was necessary before it could do business on the increased capital, in accordance with an agreement between the officers, a third person gave his note for the price of the remaining shares to one of the directors, who indorsed and delivered the same to the bank; the shares being issued in his name. The maker having become insolvent, defendant was induced by such director to execute his accommodation note to the director's uncle, who indorsed it, and it was substituted for that of the first maker. The notes were carried and reported as assets of the bank until its failure; but neither maker paid any interest, the dividends on the stock being applied thereon. The cashier gave defendant a letter assuring him that he would not be held liable on his note. Held, in an action by the receiver on a renewal of defendant's note, that such note was collectible, if given for the accommodation of the director and his associates, and not of the bank, and that such question was one of fact for the jury, under the evidence.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 66, 1862; Dec. Dig. §§ 49, 537.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by Robert Lyons, receiver of the Cosmopolitan National Bank of Pittsburgh, against James Westwater. Judgment for defendant (173 Fed. 111), and plaintiff brings error. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

F. F. Oldham and John S. Wendt, for plaintiff in error.

E. Y. Breck and James G. Westwater (James M. Butler, of counsel), for defendant in error.

Before LANNING, Circuit Judge, and ARCHBALD and CROSS, District Judges.

LANNING, Circuit Judge. This action is on a promissory note for $37,500. The Circuit Court instructed the jury to render a verdict for the defendant, Westwater. The plaintiff, Robert Lyons, receiver of the Cosmopolitan National Bank, assigns the instruction as error. It appears that about January 1, 1905, the Cosmopolitan National Bank decided to increase its capital stock from $200,000 to $500,000. The 3,000 shares of the increase were offered to subscribers at $125 per share. After all but 300 of the shares had been taken, one J. D. Lyon made his promissory note for $37,500 (the value of the 300 shares at $125 per share), dated July 5, 1905, and payable on demand to the order of F. H. McKinnie. McKinnie indorsed the note and delivered it to the bank. The bank thereupon discounted it, entered the proceeds ($37,500) to the credit of its increased capital stock account, and in due course issued certificates for the 300 shares either to McKinnie, John McClurg, or A. L. Richmond—to which of them is not clear. On July 13, 1905, upon a report to him by the bank that the increased capital stock of $300,000 had all been paid in, the Comptroller of the Currency issued his certificate to that effect, and the bank thereupon commenced to do business on the basis of a paid-up capital of $500,000. McKinnie, McClurg, and Richmond were members of the board of directors of the bank, and had agreed amongst themselves, and with the cashier and certain other officers of the bank, that the certificates for the 300 shares should be issued to one of them and delivered to the cashier for sale to such persons as might be induced to purchase them. No purchasers were ever found. The note was held by the bank until February 24, 1907, when, Lyon having failed in business, a new note, made by the defendant, James Westwater, and indorsed by H. R. Bean, was substituted for the Lyon note. The Westwater note was several times renewed, and the last renewal is the one now in suit. The Lyon note and the Westwater notes were carried as assets of the bank on its books continuously from July 5, 1905, until the appointment of the receiver on or about September 5, 1908. They were also always included as a part of such assets in the bank's reports to the Comptroller. During all of the period from July 13, 1905, to September 5, 1908, the dividends on the 300 shares were returned by the record holder of the shares to the bank and applied by it to the interest on the notes.

It is contended here by counsel for the defendant, Westwater, that on the facts above stated the 300 shares were always the property of the bank, and, consequently, that the Westwater note now in suit was in the hands of the bank, and now is in the hands of its receiver, mere accommodation paper and without consideration. We think this view is erroneous, for the reason that it assumes that the officers of a bank may hold themselves out to the Comptroller of the Currency,

the bank examiners, and the business public as original subscribers for and holders of a part of its capital stock, which they have never paid for, and yet escape liability on obligations given for such stock, provided there is a secret agreement amongst the officers that the stock shall be considered as belonging to the bank, and not to the one to whom it is issued. Such a rule of law would open a wide door to fraud. We think there is nothing in principle or authority to support it. Of course, a bank may hold paper, issued for its accommodation, on which it can never recover. But the Lyon note was given for stock issued. The certificates for the stock were probably issued to McKinnie himself, who was a party to the Lyon note. The cashier testifies that he thinks the certificates were issued to McKinnie, and McKinnie testifies that they may have been issued to him.

Section 5210 of the Revised Statutes (U. S. Comp. St. 1901, p. 3498) requires the president and cashier of every national bank to keep at all times a full and correct list of the names and residences of all the shareholders, and the number of shares held by each, in the office where its business is transacted, for the inspection of all shareholders and creditors of the bank. Presumably such a list was kept by the president and cashier of the Cosmopolitan National Bank in its office, and that the list showed that certificates for 5,000 shares had been issued. Section 5142 of the Revised Statutes (U. S. Comp. St. 1901, p. 3462) provides that "no increase of capital stock shall be valid until the whole amount of such increase is paid in." The provision of section 5210 was designed to furnish to the public dealing with the bank a knowledge of the names of its corporators and to what extent they might be relied on as giving safety to dealing with the bank. Waite v. Dowley, 94 U. S. 527, 534, 24 L. Ed. 181. The primary object of the provision of section 5142 was to prevent the "watering" of stock; that is, to prevent banking business being done upon the basis of an increased capital which did not in fact exist. Scott v. Deweese, 181 U. S. 202, 210, 21 Sup. Ct. 585, 45 L. Ed. 822.

By a trick McKinnie and his associates induced the Comptroller of the Currency and the bank's creditors and other stockholders to believe that the whole of the $300,000 of increased capital had been paid to the bank in cash. As a fact $37,500 of that sum was not paid in cash. The Lyon note was given as a substitute for the cash, and was, we doubt not, a valid asset in the hands of the bank. But whether the circumstances under which Westwater signed the note now in suit sustain his defense that he is a mere accommodation maker for the bank is, as we view the case, not a question of law for the court, but a question of fact for the jury. That he was an accommodation maker, either for the bank or for McKinnie and his associates, is certain. If his accommodation was to McKinnie and his associates, the receiver is entitled to recover; and if to the bank, there can be no recovery. There is evidence in the case on which the jury might have rendered a verdict either for or against the receiver. The testimony of McKinnie and of Westwater concerning their interview at the time Westwater signed the first of the series of Westwater notes is so ambiguous that, if the jury had been left free to draw their inferences in the case, they might have concluded that Westwater understood himself

to be an accommodation maker and Bean to be an accommodation in-dorser for McKinnie and his associates, and not for the bank.

This conclusion leads to a reversal of the judgment. There is in evidence a letter from the cashier of the bank to Westwater, dated February 23, 1907, concerning the first of the Westwater notes, in which the cashier said:

"It is explicitly understood that there is no liability attached to you [West-water] for this note; the same being used by Mr. McKinnie as a substitute for another note."

The plaintiff in error objected to the admission of this letter, and error is assigned thereon. But it is not necessary to the decision of the case to pass upon this question. If no proper basis was laid for its admission, it may possibly be done on a new trial.

The judgment will be reversed, and the record remanded, with instruction to award a venire de novo. The plaintiff in error is entitled to costs in this court.