SALTER v. WILLIAMS et al.

(Circuit Court of Appeals, Third Circuit. April 7, 1915.)

No. 1936.

INJUNCTION ⬤⟹118—BILL—SUFFICIENCY—PREMATURE DISMISSAL.

> In a suit to restrain an action on a note given for the purchase price of stock in a national bank, a bill alleging that the bank, by its president, offered to sell plaintiff the stock, making false and fraudulent representations as to the solvency of the business, its assets, surplus, etc., that plaintiff relied upon such representations and was thereby induced to purchase the stock and give his note therefor, upon which he afterwards made several payments, that when the purchase was made the bank was hopelessly insolvent, without surplus, and with liabilities much greater than its assets, that plaintiff could not have discovered the fraud until the bank closed its doors, and that thereupon he repudiated and rescinded the purchase and offered to return the stock, was prematurely dismissed without requiring an answer, as the question as to plaintiff's right to rescind after the bank failed should be reserved until the facts were definitely ascertained, including the facts as to whether the bank was the real owner of the stock, how it came to become the owner of its original capital stock, if it was not, who the real owner was, and why it held the apparent title, and whether the note was discounted for plaintiff, or merely delivered to the bank, nothing being done with it, except to renew it and make payments on account.
>
> [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 223–242; Dec. Dig. ⬤⟹118.]

Appeal from the District Court of the United States for the District of New Jersey; Wm. H. Hunt, Judge.

Suit by William D. Salter against Christopher L. Williams, receiver of the First National Bank of Bayonne, N. J., and another. From a decree dismissing the bill, plaintiff appeals. Reversed with instructions.

A. A. Melniker, of Jersey City, N. J., for appellant.
Stuart G. Gibboney, of New York City, for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. In this action William D. Salter asked the District Court to restrain a suit at law brought against him by the receiver of an insolvent national bank, and for other relief. The suit at law is upon a note given by Salter to the bank in part payment for 30 shares of the capital stock, and the defense alleged is fraudulent misrepresentation by the president. The court dismissed the bill on motion without requiring an answer, being convinced that the plaintiff was not entitled to relief. (Another suit in equity between the same parties, but for somewhat different relief, is reported in 219 Fed. 1017.) As the facts averred in the bill must therefore be taken as true, let us see what kind of a case they present.

The bill avers in substance as follows:

On December 5, 1906, the First National Bank of Bayonne was organized under the act of Congress, with a capital stock of $100,000, divided into 1,000 shares, and on December 6, 1913, the Comptroller of the Currency appointed a receiver on the ground of insolvency. Earlier in the same year, on April 4, 1913, the bank, by its president, offered to sell 30 shares of the capital stock to Salter for $6,000, representing falsely and fraudulently that the business was solvent, the assets more than $1,900,000, the surplus more than $119,000 in excess of liabilities, the securities sound, the earned dividends more than 12 per cent. annually, and the stock worth more than $200 a share. Salter relied upon these representations as true, and was induced thereby to purchase the 30 shares, paying $500 in cash and delivering his promissory note to the bank's order for $5,500, upon which he afterwards made several payments, aggregating $1,100, so that the renewal note sued upon by the receiver was for $4,400. In April, when the purchase was made, the bank was hopelessly insolvent, without surplus, and with liabilities much greater than its assets. Facts in detail are set out showing the bank's insolvency in April, and the plaintiff asserts that the fraud could not have been discovered until after the bank closed its doors, whereupon he "repudiated and rescinded, and does hereby repudiate and rescind, the purchase and ownership of said stock, and has tendered and does hereby tender a return thereof and of the dividends received by your orator thereon."

The bill then turns to the receiver's action at law on the $4,400 note, and avers that the foregoing facts had been set up as an equitable defense to that suit, but that the defense would not be heard at law. The plaintiff also averred that the receiver had brought another suit at law against him to recover the statutory assessment on the shares in question, and that the same equitable defense had there been made and overruled, so that a judgment for the full amount of the assessment had been entered. (This judgment has since been paid.) The only prayers for relief that need be taken note of are the second and third, which pray that the suit on the note may be restrained, that the note itself be surrendered and canceled, and the sale of the 30 shares be rescinded.

It will be observed that the suit in question is not to recover an assessment on the stock under R. S. § 5151, or to recover an original subscription. The decisions that deal with the first of these subjects

are not now important and need not be discussed. Whether the decisions that deal with the second subject are pertinent is in our opinion a matter that should be reserved for future consideration, after all the facts of this transaction—those already visible, and those thereby suggested as possible—have been definitely ascertained. All that we know at present is that the bank offered to sell these shares, made certain false representations, did sell the stock, and accepted a note to its order for $5,500 in part payment. In our opinion, we are not yet in a position to pronounce with safety upon the rights of the parties. For example, these further questions are at once suggested: Was the bank the real owner of these shares? If it was, how had it come to be the owner of any part of its original capital stock? If it was not, who was the real owner, and why did the bank hold the apparent title to the shares? What was the complete transaction about the note? Was the note discounted for Salter? Or was it merely delivered to the bank, nothing being done with it, except to renew it and make payments on account?

Until we have as much light as possible on the whole transaction, we do not feel prepared to take up the questions discussed on this appeal. The District Judge may have been right in dismissing the bill on the ground stated in his unreported opinion (which we quote in the margin [1]); but the bill sets forth enough to make us doubt what fur-

[1] "What the attitude of the plaintiff might have been, had he taken appropriate action before the defendant bank had failed and passed into the hands of a receiver, looking to a rescission of his contract of purchase of stock because of fraudulent acts and representations practiced by the officials of the bank, is a question not involved in the present inquiry. The facts here are that plaintiff became a stockholder in the defendant bank months before its suspension, and thereafter it carried on its regular banking business. He participated in such rights and profits as went with the stock he held. If the bank had prospered, he would have shared in its successes and enjoyed an increase in the value of his shares. But, now that circumstances have turned things to bad account, and the bank has suspended, he would rescind, if he could. As I view it, however, he ought not to be permitted to do so, and in the light of the decisions of the federal courts he cannot. There are now to be considered the rights of intervening innocent creditors, which must be protected, and in whose favor there are equities superior to any he may have. Upholding their equities as above his may be hard on plaintiff, who is presumed to have bought his stock in good faith; but, having become a stockholder for a long time before the failure of the bank, he will not now be heard to say that he ought not to be treated as a stockholder because he was induced to buy his shares by the fraudulent representations of the president of the bank. His redress, it would seem, must be such as may be given against the person who made the false representations upon which he may have relied when he bought his stock, and not against the bank to the detriment of its creditors. Scott v. Abbott, 160 Fed. 573, 87 C. C. A. 475; Lyons v. Westwater, 181 Fed. 681, 104 C. C. A. 663; Wallace v. Hood (C. C.) 89 Fed. 11. I have read the cases cited by the plaintiff's counsel. Some are based upon conditions where the party seeking to rescind was not met by the declared insolvency of the corporation and the interests of innocent third parties. Such was Taylor v. Bank, 6 S. D. 511, 62 N. W. 99. It is at once distinguishable. Some of the others cited are not directly in point, while one or two seem at variance with the rule recognized in the federal jurisdictions and are not controlling.

"Defendant's motion to strike is granted, and the motion for a stay is denied."

ther facts might be disclosed by a fuller inquiry, and we think the plaintiff should not be denied an opportunity to bring out whatever may remain behind. We intimate no opinion concerning the plaintiff's main contention; we decide nothing now, except that the bill was prematurely dismissed.

We may call attention to the recent act of March 3, 1915, especially to section 274b, which should be considered by the District Court when the record goes back, before determining what kind of order should be made below.

The decree is reversed, with instructions either to reinstate the bill, or to make such order as may be appropriate in reference to permitting the plaintiff to make defense in the action at law.