## KING v. WISE. (No. 741–4333.)

(Commission of Appeals of Texas, Section A. April 20, 1926.)

**1. Bills and notes ⬅57—Signature of person, placed on note after its completion and delivery as between original parties, must have support of new and independent consideration to be effective.**

Signature of a person, placed on a note after its completion and delivery as between original parties, to be effective, must have support of a new and independent consideration, except where signature is for accommodation of payee and paper has been further negotiated.

**2. Bills and notes ⬅57—If defendant signed note after transaction out of which note grew was fully consummated and all consideration had passed between maker and payee, he was not bound on note, where it never left hands of payee.**

If transaction out of which note grew was fully consummated and all consideration had passed between original maker and payee long before defendant signed, defendant as matter of law was not bound on note, where it never left hands of payee.

**3. Bills and notes ⬅537(3).**

Whether defendant signed renewal note as accommodation for payee *held* for jury.

**4. Bills and notes ⬅49.**

Accommodated party may not recover against accommodation maker in suit on note.

**5. Evidence ⬅418.**

Parol evidence is competent to prove identity of accommodated party in suit on note.

**6. Contracts ⬅98—Defense of fraud relates back to inception of matter, and, if established, operates ab initio.**

There being no real assent when it is induced by fraud, defense of fraud relates back to inception of matter, and, if established, operates ab initio.

**7. Evidence ⬅434(8)—Admission of proof of deceit in making contemporaneous and collateral promise does not vary terms of written instrument.**

When deceit consists in making a contemporaneous and collateral promise, admission of its proof is not for purpose of varying terms of written instrument, but to show facts which prevented instrument from taking effect as a binding obligation.

**8. Evidence ⬅444(6) — Evidence of parol agreement that signer should not be liable on note except in case of maker's death held not inadmissible as varying terms of written instrument by parol.**

Evidence of parol agreement that signer of note, containing absolute promise to pay at stated date, should not be liable thereon except in case of maker's death, *held* not inadmissible as varying terms of written instrument by parol, assuming that such promise might constitute fraud.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**9. Fraud ⟐12—Where real intent is not to do thing promised or is to do thing whose omission is promised, actionable fraud exists.**

Where real intent is not to do thing promised or is to do a thing whose omission is promised, there is an actionable fraud, if fact thus misrepresented be material and was relied on by other party to his injury.

**10. Contracts ⟐94(6)—Deceit, inducing execution of written instrument, plus utter failure of performance, is defense in suit on instrument as between immediate parties.**

If fraudulent promise not to do a thing or to do a thing whose omission is promised induced execution of a written instrument, deceit plus utter failure of performance is a defense in suit upon instrument as between immediate parties.

**11. Contracts ⟐100—Mere failure or refusal to perform oral agreement is not sufficient to raise issue of fraud.**

Mere failure or refusal to perform oral agreement is not sufficient to raise issue of fraud, but is entitled to be considered along with such other relevant facts and circumstances as may be shown.

**12. Bills and notes ⟐537(4)—Issue of fraud of payee in making alleged agreement that one signing note should not be liable thereon except in case of maker's death held for jury.**

In suit on note, issue of fraud of payee, in making alleged agreement that one signing note should not be liable thereon except in case of maker's death, *held* for jury.

**13. Bills and notes ⟐315—All defenses which were available against payee of note held available against transferee, where indorsement made him merely agent or trustee of payee (Uniform Negotiable Instruments Act, §§ 36, 37 [Rev. St. 1925, art. 5934]).**

Where indorsement of payee on note was restrictive and such as to make transferee merely his agent or trustee, in view of Uniform Negotiable Instruments Act, §§ 36, 37 (Rev. St. 1925, art. 5934), all defenses which were available against payee would be available against transferee.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by J. A. Wise against B. S. King and another. Judgment for plaintiff against defendant Boyd and for defendant King in district court was reversed and rendered in the Court of Civil Appeals (267 S. W. 543) and defendant King brings error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed in part, and reversed and remanded in part.

Bonner & Storey, of Vernon, and Turner & Dooley, of Amarillo, for plaintiff in error.

Yarbrough & Tipton, of Electra, Cook, Cook & Cole, of Vernon, and Weeks, Morrow & Francis, of Wichita Falls, for defendant in error.

NICKELS, J. Wise filed suit in the district court of Wilbarger county against Rex Boyd and B. S. King (as makers) upon a note (negotiable in form) of date November 1, 1921, and payable to I. G. Showers or order August 1, 1922. Trial resulted in an instructed verdict (and a judgment) in favor of Wise against Boyd for the amount of the note and attorneys' fees and in favor of King against Wise. Upon appeal prosecuted by Wise the honorable Court of Civil Appeals reversed the judgment of the district court and rendered judgment against King. 267 S. W. 543. Except as the statement of the case as there made is affected by additional recitals made hereinbelow, it is correct, and for that reason we do not undertake a restatement here.

We are in agreement with the honorable Court of Civil Appeals in respect to its ruling upon the question of the authority of Wise to maintain the suit, as, also, upon the proposition that the evidence is such as to require jury findings if the record exhibits a permissible legal or equitable defense asserted by King. And such a defense, in our opinion, is advanced—this in virtue of things to be mentioned.

[1, 2] The signature of a person, placed upon a note after its completion and delivery as between the original parties, in order to be effective, must have the support of a new and independent consideration (Good v. Martin, 95 U. S. 90, 24 L. Ed. 341; Jones v. Ritter, 32 Tex. 717; Simmang v. Farnsworth [Tex. Civ. App.] 24 S. W. 541; Baker v. Wahrmund, 23 S. W. 1023, 5 Tex. Civ. App. 268; People's State Bank v. Fleming-Morton Co. [Tex. Civ. App.] 160 S. W. 648, 650), except, of course, where the signature is for the accommodation of the payee and the paper has been further negotiated. Here it is undisputed that King signed the note at least one day after Boyd had signed it. King pleaded and testified, and Boyd testified, that the cattle trade out of which Boyd's note grew was fully consummated, and all the consideration had passed between Boyd (the original maker) and Showers (the payee) long before King signed. If that testimony is true, as a matter of law King was not bound on the original note, for it never left the hands of Showers. Id., Joyce, Defenses to Commercial Paper (2d Ed.) § 54. The testimony of Showers and his wife contradicts King and Boyd and makes an issue of fact, and whether that issue is a material one depends upon what happened in respect to the "renewal note," of date November 1, 1921, sued upon by Wise.

According to Boyd's testimony, he had made various payments on the original note upon the agreement of Showers to "carry" and extend time of payment of the balance, and, at numerous times, Showers assured him that he would extend time of payment if he (Boyd) would pay the interest; and this was paid. Boyd testified, also, that in the incep-

tion of the matter Showers had asked him to "get another name" on the note, and he had refused to do so, and that when (some 15 days later) King had told him about having signed the note at Showers' request he (Boyd) remonstrated and told King that he ought not to have signed. There was no further communication between Boyd and King (at least until long after the "renewal"), nor was there any communication between Boyd and Showers in reference to having King sign a renewal note. There was no communication between King and Showers after King had signed the original note, except that, by letter, Showers notified King that the note was at the Farmers' State Bank. It is true that King testified to having written Showers some letters, but Showers denied their receipt. And so far as the record goes, what actually happened in connection with the "renewal" is this: The Farmers' State Bank notified Boyd that it held the original note for collection, and Boyd thereupon (and after having talked with Showers) went to the bank and "signed the renewal note." King was not present. Some time thereafter (the date not being shown) King went to the bank and "talked with Mr. Frank Massie, or one of the boys at the bank, about the renewal note" and signed it. The subject-matter of the "talk" which Boyd had with Showers, or of that which King had with Massie "or one 'of the boys," is not shown except as it may be indicated in what has already been said. King, in his pleading and testimony, asserted, in substance, that he signed the "renewal note" purely as "an accommodation" party, without any change of intent and purpose from that characterizing his signature of the original note.

Because King was not bound on the original note (if his testimony and that of Boyd be true), a new consideration was essential to his liability on the second one unless it had come into the hands of a holder for value. That consideration, of course, could have been furnished in a binding agreement by Showers to renew upon condition that King would sign but the proof is insufficient to show that agreement with a conclusive effect. We do not have a situation here analogous to that disclosed in Bonner Oil Co. v. Gaines, 191 S. W. 552, 108 Tex. 232, Ann. Cas. 1918C, 574, or in People's State Bank v. Fleming-Morton Co., supra (cited by the Court of Civil Appeals), or in other like cases. For in those instances the notes which were extended, or renewed, etc., were originally obligatory upon the accommodation parties; e. g., the original note signed by Gaines (in the controversy involved in Bonner Oil Co. v. Gaines, supra), was given and accepted for, and in consideration of, the extension of a pre-existing debt, whose payment the creditor then had a right to enforce. The company, in that instance, yielded its immediate right to sue, etc., in consideration of the signatures of the debtor and of Gaines; hence, the question of renewal of that note was merely one of the renewal of Gaines' own existent obligation. In the event the testimony of King and of Boyd is untrue, or shall be disbelieved by the jury, and Showers' version of the matter be true, or be so taken, then the controversy will have aspects making it comparable (unless affected by the other matter to be mentioned hereinafter or by new pleading or evidence) to those before the courts in the cases cited.

[3-5] There is another view of the case made which leads to the same result. King alleged and testified that he signed each of the notes merely "as an accommodation" party. He does not, either in pleading or proof, indicate the party accommodated with that degree of certainty necessary to a determination, as a matter of law, whether it was Boyd or Showers. That Boyd never requested King to sign either note is undisputed. That Boyd, upon his first knowledge of King's signature, remonstrated is likewise established, as is the fact that (in Boyd's absence) Showers requested King to sign. If the testimony of Boyd and King be true, there was no accommodation of Boyd, and, perforce, Showers was the accommodatee. On the other hand, if the testimony of Showers (to the effect that the cattle deal had not been closed when King signed, and that he would not have closed it otherwise) be true, Boyd was the accommodated party. Notwithstanding the indefiniteness (and some incongruity) of the pleading and testimony, that is a matter which requires a determination of fact issues by a jury before the rights of the parties may be given proper disposition. For it would be flagrantly contrary to natural justice to permit recovery by, or in behalf of, the accommodated party, and of course the law would not allow that course. Brady v. Cobbs (Tex. Civ. App.) 211 S. W. 802; Central Bank, etc., Co. v. Ford (Tex. Civ. App.) 152 S. W. 700; Joyce, Defenses To Commercial Paper (2d Ed.) § 55. The statutes are silent as to the manner of proof of the identity of the accommodated party, and in a situation such as we have here, at least, parol evidence is competent. Haddock, etc., Co. v. Haddock, 85 N. E. 682, 192 N. Y. 499, 19 L. R. A. (N. S.) 136, 141; Lyons v. Westwater, 181 F. 681, 104 C. C. A. 663; Joyce, Id., § 55.

The fact that either, or both, of the issues mentioned may be so resolved by the jury as that King will be liable on the note makes it necessary to determine whether or not any other situation may arise in the case (as now made by the pleading) to affect that (possible) liability. He alleged that Showers' request for him to sign the original note was coupled with the assurance that he (Showers) knew Boyd "had a large amount of property and was financially able to pay said note," and a promise that he (Showers) "would not hold said King liable on said note nor expect him to pay it, and would not sue him or try to

hold him liable thereon," or "look to" him "for payment or endeavor to hold him liable thereon," "except in the event the said Boyd should die before the maturity of the note"; that both the original note and the renewal note were signed in reliance upon those promises, and neither would have been signed except for them and except for reliance thereon; and that the promises were falsely and fraudulently made "with the intention of the said Showers not to carry them out." The testimony suggests an apparent reason why Showers was willing to make that sort of an arrangement.

[6-8] Deceitful procuration of an apparent agreement is a defense primarily, because "there can be no real assent when it is induced by fraud." 1 Elliott on Contracts, § 70. The defense relates back to the inception of the matter and, if established, it operates ab initio. Hence, when the deceit consists in the making of a contemporaneous and collateral promise, the admission of its proof is not for the purpose of varying the terms of the written instrument (whose execution was thus procured), but for the purpose of showing facts which prevented the instrument from taking effect as a binding obligation. Rapid Transit Ry. Co. v. Smith, 86 S. W. 322, 98 Tex. 555; Edward Thompson Co. v. Sawyers, 234 S. W. 873, 111 Tex. 374. King's averment, and proof to support it, therefore, do not present an effort to vary by parol in contravention of the rules of evidence, assuming, of course, that the making of the false promise may constitute fraud.

[9-12] And that it may do so, under the circumstances disclosed, we think, is clear. The state of Showers' mind at the time was a fact; what that state was in reality was a fact exclusively within his own knowledge. If he represented his state of mind (i. e., his intent) as being one thing, whereas it was the opposite, he misrepresented a then existent fact. Roberts v. James, 85 A. 244, 83 N. J. Law, 492, Ann. Cas. 1914B, 859; Adams v. Gillig, 92 N. E. 670, 199 N. Y. 314, 32 L. R. A. (N. S.) 127, 20 Ann. Cas. 910.

The misrepresentation may appropriately take the guise of a promise to do, or to refrain from doing, something in the future, thus importing a declaration of present intent in accord with the promise, whereas the real intent (the fact) was not to do the thing promised, or was to do the thing whose omission was promised. In such a case there is actionable fraud if the fact, thus misrepresented, be material, and was relied upon by the other party to his injury. Chicago, T. & M. C. Ry. Co. v. Titterington, 19 S. W. 472, 84 Tex. 218, 31 Am. St. Rep. 39. If the promise, thus fraudulently made, induced the execution of the written instrument, the deceit (plus utter failure of performance) is an ef-

ficient defense in a suit upon the instrument as between the immediate parties. Id., Cearley v. May, 167 S. W. 725, 106 Tex. 444; Henderson v. San Antonio & M. G. R. Co., 17 Tex. 560, 67 Am. Dec. 675; Jones v. Crawford, 33 S. C. 51, 107 Ga. 318, 45 L. R. A. 105. Such a case is to be distinguished from that situation in which a party has made a promise (with an existent intent to fulfill its terms), and who then changed his mind and refused to perform, else every breach of contract would involve fraud. Bigham v. Bigham, 57 Tex. 238; Chicago, T. & M. C. Railway Co. v. Titterington, supra. In the latter instance there is a breach of duty, but no misrepresentation of a material fact operating to procure the agreement evidenced by the contemporaneous written contract. The presence of that distinction affects the evidential value of the fact of breach of the promise; the breach may as consistently indicate a mere subsequent change of mind as it may indicate an original intent not to perform the promise. The mere fact of failure or refusal to perform the oral agreement is not sufficient to raise the issue of fraud, but it is entitled to be considered along with such other relevant facts and circumstances as may be shown. Chicago, T. & M. C. Ry. Co. v. Titterington, supra. In our opinion the issue is presented by pleading and testimony in such a way as to require its submission to the jury.

[13] The fact that the note has come into the possession of Wise in such manner as to enable him to sue upon it does not preclude existence of the issues described. For the indorsement of Showers, on the record, is restrictive and of such kind as to make Wise merely the agent or trustee of Showers (sections 36, 37, Uniform Negotiable Instruments Act; article 5934, R. S. 1925), so that all defenses are available against him which would be proper as against Showers if he were the plaintiff.

We believe the rights of the parties are determinable solely upon the issues mentioned, and that the question of conditional delivery (on the pleadings as they now stand) is not in the case.

Accordingly we recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the district court, in so far as it awards recovery in favor of Wise against Boyd, be affirmed, and that it be reversed (and the cause be remanded) as between Wise and King.

GREENWOOD and PIERSON, JJ. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed, in so far as Wise recovered judgment against Boyd, but reversed and remanded in so far as Wise recovered judgment against King.